UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul F. SOARES, Defendant–Appellant.

No. 92–10574.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 17, 1993.

Decided July 6, 1993.

Marcus S. Topel, Daniel F. Cook and Stephen N. Adams, Topel & Goodman, San Francisco, CA, for defendant-appellant.

Robert K. Crowe, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before: FAIRCHILD,* BEEZER, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

On June 13, 1990, a federal grand jury returned a seven count indictment against defendant Paul Fairfax Soares. The indictment charged Soares with four counts of having received kickbacks "because of" his fiduciary position as the investment advisor for an employee pension plan, in violation of 18 U.S.C. § 1954 (counts one through four), and with three counts of embezzling money from the same employee pension plan, in violation of 18 U.S.C. § 664 (counts five through seven). After waiving his right to a jury trial, Soares was convicted on counts one through four and on count seven. Soares now appeals. The district court had jurisdiction pursuant to 28 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I. Facts

Soares controlled a business known as Tamarack Associates ("Tamarack"). On June 1, 1984, Soares and Tamarack entered into a written agreement with the Sacramento Independent Hotel, Restaurant and Tavern Employees Pension Trust ("the Pension Fund"), which was an employee pension plan governed by the Employee Retirement In-

---

* Hon. Thomas E. Fairchild, Senior United States Circuit Judge for the 7th Circuit Court of Appeals, sitting by designation.

come Security Act of 1974 ("ERISA"). The agreement made Tamarack the investment advisor for the Pension Fund and thereby gave Soares the authority to control the Pension Fund's total investment portfolio.

While Soares was acting, through Tamarack, in a fiduciary capacity for the Pension Fund, he also controlled another business known as the Casa Vista Limited Partnership ("Casa Vista"), whose purpose was to develop certain parcels of real property. Casa Vista and Tamarack shared the same business address.

In June of 1985, Soares caused the Pension Fund to purchase four parcels of real estate. Counts one through four of the indictment against Soares charged that he conditioned the purchase upon the seller's agreement to invest a substantial portion of the sale proceeds in Casa Vista and also ensured that he received broker's commissions, both in violation of 18 U.S.C. § 1954.

Soares does not dispute the factual allegations of counts one through four. Instead, Soares claims he believed his actions were "entirely legal" and, in fact, were taken on the advice of his attorney. Soares appeals the district court's holding that 18 U.S.C. § 1954 does not require the government to show specific intent—an interpretation that Soares contends prevented him from offering his advice of counsel defense.

Soares also appeals on sufficiency of evidence grounds his conviction on count seven, the 18 U.S.C. § 644 embezzlement charge. We discuss each issue in turn.

## II. Discussion

A. *18 U.S.C. § 1954*

█ Under 18 U.S.C. § 1954, a person in Soares position with respect to the Pension Fund who

receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money, or thing of value *because of* or *with intent to be influenced with respect to,* any of his actions, decisions, or other duties relating to any question or matter concerning such plan ... shall be fined not more than $10,000 or imprisoned not more than three years, or both....

18 U.S.C. § 1954 (1988) (emphasis added). Before the district court, Soares argued that the "because of" prong of this statute requires proof that the "defendant knew his acts were prohibited by law" and that "the government demonstrates *mens rea* under the 'because of' clause only where it shows that a defendant knew his acts were prohibited by law." The district court rejected these arguments:

I think that the language of the statute ... clearly evidences an intent to make the receipt of money 'because of' a position as a trustee illegal. Therefore, the court's intended decision is to deny the request that the court infer some other mental element than that which is from the face of the statute.

Thus, the district court required a showing only that Soares received a "thing of value" *because of* his actions, duties, or decisions relating to the Pension Fund, not that he *knew* such receipt to be illegal. Soares challenges this interpretation of § 1954 as erroneous. We review de novo the district court's interpretation of 18 U.S.C. § 1954. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Three other circuits previously have addressed this very issue, and each has agreed with the district court's interpretation. *See, e.g., United States v. Pieper,* 854 F.2d 1020 (7th Cir.1988); *United States v. Romano,* 684 F.2d 1057 (2d Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982); and *United States v. Friedland,* 660 F.2d 919 (3d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982). In *Pieper,* for example, the Seventh Circuit resisted the defendant's attempts to require the government to show specific intent under the "because of" prong of § 1954.

[Defendant's] assertion that "he did not accept any renumeration [sic] to influence his actions with respect to any matters pending before the Fund's Board," a defense against the "intent" prong of § 1954, even if true, is irrelevant to a determination of whether the evidence was sufficient

to support his conviction under the "because of" prong.

*Pieper,* 854 F.2d at 1024.

Similarly, in *Romano,* the Second Circuit rejected the defendant's contention that § 1954 did not reach his acceptance of television sets from a bank as gifts for opening accounts as trustee of a union pension fund.

[T]he statute punishes the receipt of any of these things [of value] either "because of," or "with the intent to be influenced" with respect to, any action or decision concerning a pension fund. If only corrupt transactions were intended to be covered, Congress would not have added the "because of" clause, but would have limited the statute to those possessing the intent to be influenced.

*Romano,* 684 F.2d at 1064 (footnote omitted).

Finally, in *Friedland,* the Third Circuit rejected the defendants' claim that, in order to come under the "because of" prong of § 1954, they must have been shown actually to have taken some action in return for the kickbacks.

If actual exercise of influence were a prerequisite to a violation, then anyone who could potentially influence a future decision concerning a pension plan would be free to solicit kickbacks so long as he ultimately took no action to influence the decision. Such a construction is inconsistent with the broad purpose of § 1954.

*Friedland,* 660 F.2d at 927.

Nonetheless, Soares urges us to reject the reasoning of these courts based on *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985),[1] particularly its statements that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," *id.* at 427, 105 S.Ct. at 2089 (quoting *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)), and "criminal offenses requiring no *mens rea* have a 'generally disfavored status.'" *Id.* 471 U.S. at 426, 105 S.Ct. at 2088 (quoting *United States v. United States*

*Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978)).

However, we conclude that *Liparota* does not control here. First, by its own terms, *Liparota* applies only in cases where the statute at issue is ambiguous as to the *mens rea* requirement. *Id.* 471 U.S. at 425, 105 S.Ct. at 2088 ("Absent indication of contrary purpose in the language or legislative history, of the statute, we believe that [statutes] require[ ] a showing that the defendant knew his conduct to be unauthorized by statute or regulations."). Section 1954 is not such a statute. In *Liparota,* the statute was ambiguous because it was unclear what the antecedent "knowingly" modified. In § 1954, however, Congress unambiguously indicated that it envisioned a two-pronged liability scheme: A fiduciary who accepts a thing of value "because of" his position *or* "with intent to be influenced with respect to any of his actions" is criminally liable.

Second, we point out that in *Liparota,* the Supreme Court was concerned that a contrary interpretation of the *mens rea* requirement could criminalize apparently innocent conduct. *Liparota,* 471 U.S. at 426, 105 S.Ct. at 2088 ("This construction is particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct."). In § 1954, however, Congress expressed its intent " 'to reach all fiduciaries who profit (other than by regular compensation) as a result of their decisions to invest union pension funds.' " *Pieper,* 854 F.2d at 1025 (quoting *Romano,* 684 F.2d at 1064, and citing S.Rep. No. 908, 87th Cong., 2nd Sess., 4–5, 11 (1961)). The broad purpose of the statute indicates that these fiduciaries do not have to *know* their conduct to be illegal.

Accordingly, we find *Liparota* inapposite and join the Second, Third, and Seventh Circuits in interpreting § 1954 as envisioning a dual liability scheme, one prong of which (the "because of" prong) requires no showing of

---

1. *Liparota* specifically addressed the extent to which the word "knowingly" modifies successive verbs in a criminal statute, namely 7 U.S.C. § 2024(b)(1). We have applied *Liparota* in that general context. *See, e.g., United States v. Speach,* 968 F.2d 795, 796 (9th Cir.1992) (applying *Liparota* to the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d)(1)).

specific intent for liability. The district court properly interpreted the statute.

## B. Sufficiency of the Evidence

Soares also challenges on sufficiency of evidence grounds his conviction on count seven, embezzlement under 18 U.S.C. § 664.[2] There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bishop*, 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The same test applies to both jury and bench trials. *United States v. Mayberry*, 913 F.2d 719, 721 (9th Cir.1990); *United States v. Spears*, 631 F.2d 114, 117 (9th Cir.1980).

With regard to count seven, both the defendant and the prosecution stipulated that the defendant's guilt or innocence would be determined from the Government's Summary of Evidence, the Defendant's Offer of Proof, and documents presented at trial. The Government's Summary of Evidence showed that Soares retained Oliviera Construction Company to renovate an apartment owned by the Pension Fund. Originally, the work was to cost approximately $50,000, but additional costs increased the amount of the job to just over $64,000. Soares and Oliviera Construction subsequently agreed to this new price and established a payment schedule.

Shortly thereafter, Soares instructed one of his Tamarack employees, Lynette Grippi, to call Oliviera Construction Company and request that a new contract be created to reflect that the original contract was for $85,000, not $64,000. This new contract was to reflect the original contract date of August, 1985. When Oliviera Construction Company balked, Soares personally sent them a fee statement that included the additional $20,000. After Oliviera Construction Company received payment from the Pension Fund, it sent Soares a check for the $20,000, which he then deposited in his personal account.

Originally, to Oliviera Construction Company, Soares justified the $20,000 as a consulting fee. However, no one connected with Soares' various machinations with respect to the contract, including Lynette Grippi, knew of any consulting services provided by Soares. Moreover, at trial Soares abandoned this position and claimed that the $20,000 was to reimburse him for furniture he had purchased for the Pension Fund's apartment. This was the nature of the Defendant's Offer of Proof. However, the trial court found that the evidence did not sustain Soares' explanation and that his defense was not credible. Respecting this as properly the role of the trier of fact, *see United States v. Vasquez*, 858 F.2d 1387, 1391 (9th Cir.1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 978 (1989), and viewing the evidence in the light most favorable to the prosecution, we cannot say that any rational trier of fact could not find the essential elements of a violation of § 664 beyond a reasonable doubt. This is not a close case.

**AFFIRMED.**

---

**2.** 18 U.S.C. § 664 provides, in pertinent part, that

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds ... or other assets of any ... employee pension benefit plan ... shall be fined not more than $10,000, or imprisoned not more than five years, or both.