57 F.3d 1078
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Keith E. DOLGAARD and William E. Miller, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
William E. MILLER and Keith E. Dolgaard, Defendants-Appellants.
 Nos. 94-10187, 94-10188, 94-10518, 94-10519.
 United States Court of Appeals, Ninth Circuit.
 June 7, 1995.
 
 Before CUMMINGS,* SCHROEDER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Miller, an investment manager for several union pension trust funds, invested a large percentage of the funds he controlled in real estate transactions brokered by Dolgaard. During the same six-year span, Dolgaard, through various corporate identities, made payments to Miller totaling $650,000 of which over $350,000 was never repaid. Miller and Dolgaard were both convicted by a jury of violating 18 U.S.C. Sec. 1954 and related RICO, conspiracy, and forfeiture charges. They raise numerous challenges to their convictions, sentences and forfeitures. We affirm.
 
 I. Sufficiency of the evidence
 
 3
 This court will not disturb a jury conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 A. ERISA
 
 4
 Miller challenges the sufficiency of the evidence establishing that the trust funds were subject to ERISA. The administrator of the funds testified that he understood them to be subject to ERISA. This evidence was uncontradicted and sufficient. Moreover, Miller introduced financial statements from one of the funds which stated that the plan was subject to ERISA.
 
 B. Counts 1 and 7
 
 5
 Miller and Dolgaard challenge the sufficiency of the evidence establishing their violations of 18 U.S.C. Sec. 1954 and their conspiracy to violate it. Miller argues that the government failed to tie the "loans" from Dolgaard to Miller "to the amount of Dolgaard business with the pension fund." Under Sec. 1954, however, the government is not required to prove such a connection, nor to prove that the bribes were necessary or efficacious. As this court recently noted:
 
 
 6
 [T]he statute punishes the receipt of these things either "because of" or "with the intent to be influenced" with respect to, any action or decision concerning a pension fund. If only corrupt transactions were intended to be covered, Congress would not have added the "because of" clause, but would have limited the statute to those possessing the intent to be influenced.
 
 
 7
 United States v. Soares, 998 F.2d 671, 673 (9th Cir.1993) (quoting United States v. Romano, 684 F.2d 1057, 1064 (2d Cir.), cert. denied, 459 U.S. 1016 (1982)), cert. denied, 114 S.Ct. 927 (1994). There was more than sufficient evidence for the jury to conclude that Dolgaard made the payments to Miller because of his investment duties with the trust fund. The government was not required to prove that the payments affected Miller's decisions. Soares, 998 F.2d at 671.
 
 
 8
 Miller also claims that "the evidence merely established that, from time to time, Mr. Miller borrowed money from Mr. Dolgaard" and did not establish an overarching agreement necessary to support the conspiracy charge. However, an agreement need not be explicit, and may be inferred from the facts and circumstances of the case. United States v. Boone, 951 F.2d 1526, 1543 (9th Cir.1991). The repeated payments from different Dolgaard-controlled entities over a four-year period coupled with Miller's investment of $166 million in trust fund money--92% of the trust funds' real estate holdings in 1988--in deals brokered by Dolgaard on which Dolgaard received $6 million in fees is more than sufficient evidence for a rational jury to conclude that Miller and Dolgaard agreed that Dolgaard would make payments to Miller and Miller would invest trust fund assets in transactions brokered by Dolgaard.
 
 C. Existence of a RICO enterprise
 
 9
 Miller also claims that the government failed to prove the existence of a RICO enterprise. The indictment alleged an "association in fact" enterprise between Miller and his various employers, i.e., the various investment companies which owned the business which employed him during 1984-1988. The government's position was that Miller and the various entities that employed him during the relevant period were associated in fact and "shared the common purpose of providing investment services."
 
 
 10
 Miller claims that the government fatally erred when it alleged an association in fact between Miller and his various employers because "no organizational structure between the various corporations listed in the indictment and Miller was established" and "[t]he lack of temporal co-existence of any of the corporations makes an 'association in fact' impossible." A RICO enterprise, however, may consist of individuals associated in fact with corporations. United States v. Feldman, 853 F.2d 648, 655 (9th Cir.1988), cert. denied, 489 U.S. 1030 (1989). Miller's connection as employee of the various named corporations satisfies the "ongoing organization" requirement and the providing of investment services constitutes the required common goal.
 
 II. Evidentiary Rulings
 
 11
 A. Admission of Erickson episode under Rule 404(b)
 
 
 12
 We review the trial court's decision to admit evidence under Fed.R.Evid. 404(b) for abuse of discretion. United States v. Mundi, 892 F.2d 817, 820 (9th Cir.1989), cert. denied, 498 U.S. 1119 (1991). The court admitted evidence of Miller's looting of Mary Erickson's account under Rule 404(b) as evidence of Miller's motive. Both Dolgaard and Miller argue that this evidence was irrelevant, unfairly prejudicial, and established only by hearsay.
 
 1. Proper purpose
 
 13
 "Motive" is listed in Rule 404(b) as one of the purposes for which prior bad act evidence may be admitted. Evidence establishing motive is admissible in a prosecution even where motive is not an element of the offense. United States v. Bradshaw, 690 F.2d 704, 708 (9th Cir.1982), cert. denied, 463 U.S. 1210 (1983).
 
 
 14
 Because Miller had been caught looting Erickson's account he was in desperate need of money to pay her back and avoid disclosure and possible prosecution for violating his fiduciary obligation. In United States v. Feldman, 788 F.2d 544, 557 (9th Cir.1986), this court held that financial need is probative and properly admitted in a case involving a crime resulting in financial gain. The connection is buttressed in this case by the fact that Dolgaard's third payment to Miller was wired to Miller's account on the same day his check to Erickson was presented for payment and supplied the funds required for the check to clear.
 
 2. Unfair prejudice
 
 15
 The jury viewed a videotaped deposition of the elderly Mrs. Erickson in a hospital bed. Defendants claim that this evidence was unfairly prejudicial, particularly in light of Miller's offer to stipulate that he owed Mrs. Erickson money and had to repay it. The offered stipulation was not sufficient. The degree to which Miller may have been motivated to accept illegal kickbacks depended on the nature of his indebtedness to Mrs. Erickson, i.e., that disclosure or nonpayment likely would lead to criminal prosecution and the end of his career as an investment advisor. Given the inadequacy of the offered stipulation, the trial court did not abuse its discretion by admitting the videotaped deposition.
 
 3. Admissibility of evidence of prior act
 
 16
 Miller claims that "[e]vidence of the actual misappropriation by Mr. Miller from Mary Erickson's account rested solely on hearsay," but Mrs. Erickson herself testified in the videotaped deposition. Miller also specifically challenges the admission of letters between Mrs. Erickson's accountant and attorney and Miller. All of the letters were properly admitted. Some of the letters were admissible as statements by a party-opponent, others as statements in which a party-opponent has "manifested an adoption of belief in its truth" under Rule of Evidence 801(d)(2)(B). Still other letters from Erickson's accountant and attorney pressuring Miller for repayment were relevant as to Miller's state of mind and were not admitted for the truth of the matter asserted. Thus they were not hearsay.
 
 B. Exclusion of defense evidence
 
 17
 The court excluded as irrelevant the defense's offered testimony on the quality and prudence of the investments brokered by Dolgaard. The court's ruling was obviously correct. As discussed above, payments to a fiduciary because of his position violate Sec. 1954 whether or not they are effective.
 
 C. Admission of Code of Conduct Manual
 
 18
 At trial, the government introduced a document consisting of an attestation signed by Miller on September 29, 1986, on the letterhead of Manufacturers Hanover Investment Corporation, stating that he had read and agreed to comply with the "attached conflict of interest policy statement," and an attached "Code of Conduct" of Manufacturers Hanover Corporation. The document came from the files of Miller's employer. Miller argues that the document was improperly admitted because the government did not establish all the requirements for the business records exception to the hearsay rule. This claim fails because the Code was not hearsay in the first place. It was not introduced to prove the truth of the matters asserted in the Code. It was introduced, as Miller acknowledges, to show Miller's awareness that receiving gratuities from Dolgaard, who sold investments to the Trust Fund, was improper and wrong. Fed.R.Evid. 801(c).
 
 D. Testimony regarding lack of repayments
 
 19
 During redirect examination, FBI Agent Fitzpatrick testified that he found no evidence of any "repayments" from Miller to Dolgaard, other than the $279,000 identified by Miller's attorney during cross-examination, and that he found no evidence that Dolgaard initiated any civil action to collect the amount owed. Miller now claims that the non-repayment testimony is hearsay. Because he did not make that objection at trial we review the admission only for plain error. United States v. Gomez, 908 F.2d 497, 500 (9th Cir.1990).
 
 
 20
 Fitzpatrick's testimony that he found no evidence of repayment is admissible under Rule of Evidence 1006 as a summary of Miller's bank records which were admitted into evidence. Moreover, any error would be harmless since it was essentially undisputed that Miller paid back less than half of the $650,000 he received from Dolgaard.
 
 E. Evidence of nondisclosure
 
 21
 Miller argues that evidence that the payments from Dolgaard to Miller were not disclosed to the trustees and administrator of the trust funds or to Miller's and Dolgaard's co-workers was irrelevant and thus improperly admitted. As a fiduciary to the trust funds, Miller obviously had a duty at the least to disclose the conflict of interest created by the payments from Dolgaard. That he did not, makes it more likely that he realized they were improper payments made because of his position and not "innocent loans" as was his contention at trial. The evidence was therefore relevant and properly admitted.
 
 III. Prosecutorial Misconduct
 
 22
 Prosecutorial comments to which the defendant objects are reviewed for harmless error, while comments to which the defendant failed to object are reviewed for plain error. United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986). A claim of prosecutorial misconduct must be viewed in the entire context of the trial. "Reversal is justified only when such misconduct denies the defendant a fair trial ... Even if misconduct occurred, reversal is warranted only if it is more probable than not that the misconduct materially affected the verdict." United States v. Christophe, 833 F.2d 1296, 1300 (9th Cir.1987).
 
 
 23
 Miller complains for the first time on appeal about numerous statements by the prosecutor in his opening statement and closing argument. None constitutes plain error and most do not warrant discussion.
 
 
 24
 At two points the prosecutor misstated or overstated the evidence. In opening statement, the prosecutor stated that no one knew of the financial relationship between Miller and Dolgaard. An accurate statement would have been that individuals associated with the trust funds did not know. Since those were the relevant people to whom Miller owed a fiduciary duty, the overstatement was immaterial. Moreover, defense counsel used the misstatement against the government in his closing argument.
 
 
 25
 Similarly in his closing, the prosecutor told the jury that Miller had not advised his employer of the payments from Dolgaard. The statement was incorrect because no evidence was introduced showing whether he advised his employer or not. This misstatement was harmless in light of the overwhelming evidence against Miller.
 
 IV. Sentences
 
 26
 This court reviews a district court's interpretation of the Sentencing Guidelines de novo, while the factual findings underlying the sentence are reviewed for clear error. United States v. Pemberton, 904 F.2d 515, 516 (9th Cir.1990).
 
 
 27
 Miller first argues that the court "double counted" when it added two points to Miller's offense level for "abuse of trust" under Sec. 3B1.3. His offense level was calculated using Sec. 2E1.1, the RICO guideline. Under that guideline, Miller's base offense level is the greater of 19 or the offense level of the underlying racketeering offense. His underlying offense is covered by Sec. 2E5.1, and was calculated to be 19 including a 2-level increase for his position as a fiduciary. Use of that 2-level increase precludes adding two more points under Sec. 3B1.3. Sec. 2E5.1, comment, n. 5. Therefore, if his underlying offense level were 20 including 2 levels for his fiduciary position and the court added 2 under Sec. 3B1.3 for a total of 22, Miller would have a legitimate claim of double counting. But that is not this case. Here, the two level increase to reach 19 for his underlying offense had no effect because he would have received 19 from Sec. 2E1.1(a)(1) anyway. And since there is no other reason not to apply the Sec. 3B1.3 enhancement to the RICO base level, his argument fails.
 
 
 28
 Finally, Miller claims that the district court erred by failing to depart downward. A district court's decision not to depart downward is normally not reviewable, although this court will review de novo a "district court's legal determination that the guidelines prevent departure if the court indicates it would otherwise have departed." United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992). Here, it appears that the district court held that the guidelines did not authorize departure. That conclusion was not error. Miller argues that a downward departure is justified because (1) in 64 years of life he has no prior convictions, has served in the Marines and has raised a family; (2) many letters attested to his character and service to the community; and (3) he sustained a gunshot wound to the head while trying to save restaurant patrons during an armed robbery and is now partially disabled.
 
 
 29
 Miller's lack of a criminal record is, of course, taken into account in selecting his criminal history category. Miller argues that a 65-year-old person with a single felony more than ten years old would fall into category I, as would a person like himself who had no record at all. However, age is not ordinarily a relevant departure category. U.S.S.G. Sec. 5H1.1. While the guidelines note that a criminal history category may be inadequate to reflect the lack of seriousness of the defendant's conduct (giving the example of a defendant who is only in Category II because he has two minor misdemeanors both nearly 10 years old), they explicitly state that "a departure below the lower limit of the guideline range for Criminal History Category I on the basis of adequacy of criminal history cannot be appropriate." U.S.S.G. Sec. 4A1.3. Moreover, prior military, civic, charitable, or public service and prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, U.S.S.G. Sec. 5H1.11, and this case does not present sufficiently unusual circumstances.
 
 
 30
 Dolgaard argues that the jury should have been instructed on the possible sentences for each alleged offense. We decline this invitation to alter the established division of labor between the court and jury in a criminal trial.
 
 V. Forfeitures
 
 31
 Following the jury's verdict on the criminal counts, the criminal forfeiture counts were submitted to the court rather than the jury by agreement of the parties. The court ordered that Miller forfeit $650,000 and that Dolgaard forfeit $5,674,737. Both defendants challenge the amount of their forfeitures. Our review is deferential. We will affirm the district court's order if it is supported by the evidence.
 
 
 32
 Miller argues that the $650,000 ordered by the court must be reduced by the $279,000 Miller allegedly repaid to Dolgaard. 18 U.S.C. Sec. 1963(a)(1) reaches "any interest the person has acquired or maintained in violation of section 1962." Each of the nine payments--totalling $650,000--which Miller received from Dolgaard were in violation of Sec. 1962 whether they were kickbacks, fees, commissions, gifts or loans. 18 U.S.C. Sec. 1954. That Miller may have funneled some of this money back to Dolgaard is irrelevant because the payments were illegal gains, and the government's right to them vested under 18 U.S.C. Sec. 1963(c) at the time Miller received them.
 
 
 33
 Dolgaard claims that the $5.7 million he was ordered to forfeit was grossly disproportionate to the offense committed and thus violative of the 8th Amendment. We review the district court's determination to the contrary for abuse of discretion and find none. The $5.7 million represents fees Dolgaard and his controlled entities received for trust fund investments Miller placed through Dolgaard. Requiring that Dolgaard forfeit his ill-gotten gains is not cruel and unusual punishment. United States v. Feldman, 853 F.2d 648 (9th Cir.1988). Dolgaard's claim that he should not be responsible for all of the fees received by his wholly owned corporations is also without merit.
 
 
 34
 Finally, we reject Dolgaard's claim that Sec. 1963(a) is "vague, indefinite and uncertain in its application." Russello v. United States, 464 U.S. 16, 29 (1983) ("the language of the RICO forfeiture provision is clear").
 
 
 35
 AFFIRMED.
 
 
 
 *
 Honorable Walter J. Cummings, United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3