876 A.2d 642

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Jill Johnson PENNINGTON.

Misc. AG No. 12, Sept. Term, 2004.

Court of Appeals of Maryland.

June 22, 2005.

**568**

Marianne J. Lee, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

N. Frank Wiggins, Washington, DC (William C. Brennan, Jr., Upper Marlboro), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

The Attorney Grievance Commission of Maryland filed a petition with this Court for disciplinary action against Jill Johnson Pennington, alleging violations of the Maryland Rules of Professional Conduct. The Commission charged respondent with violating the following Maryland Rules of Professional Conduct: (1) Rule 1.1 Competence,[1] (2) Rule 1.2 Scope of Representation,[2] (3) Rule 1.3 Diligence,[3] (4) Rule 1.4 Com-

---

**1.** Rule 1.1 provides as follows:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**2.** Rule 1.2 provides, in pertinent part, as follows:

"(a) A lawyer shall abide by a client's decisions concerning the objectives of representation ... and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter."

**3.** Rule 1.3 provides as follows:

munication,[4] (5) Rule 1.5 Fees,[5] (6) Rule 1.7 Conflict of Interest: General Rule,[6] (7) Rule 1.16 Declining or Terminating Representation,[7] and (8) Rule 8.4 Misconduct.[8] Pursuant to Maryland Rule 16–752(a), we referred the matter to Judge Steven I. Platt of the Circuit Court for Prince George's County to make findings of fact and proposed conclusions of law. Judge Platt held an evidentiary hearing and concluded that respondent had violated Rules 1.1, 1.2, 1.3, 1.4(a) and (b), 1.7(b), 1.16(a)(1), and 8.4(c) and (d) of the Maryland Rules of Professional Conduct.

---

"A lawyer shall act with reasonable diligence and promptness in representing a client."

4. Rule 1.4 provides as follows:
"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Prior to the hearing, Bar Counsel dismissed the Rule 1.5 charges.

6. Rule 1.7 provides, in pertinent part, as follows:
"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation."

7. Rule 1.16 provides, in pertinent part, as follows:
"(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Rules of Professional Conduct or other law[.]"

8. Rule 8.4 provides, in pertinent part, as follows:
"It is professional misconduct for a lawyer to:
\* \* \*
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

## I.

Judge Platt made the following findings of fact and conclusions of law:

### *FINDINGS OF FACT*

"The material facts of this case are not in dispute. Respondent was admitted to the Bar of the Court of Appeals of Maryland on January 9, 1989. She is also admitted to practice law in the District of Columbia and Minnesota. Respondent, since 1991, has continuously maintained an office for the practice of law at 9200 Basil Court, Suite 111, Upper Marlboro, Maryland 20774, where she is a sole practitioner. Respondent is an experienced practitioner in the areas of personal injury and family law, among others.

"On September 15, 1999, Denise Haynes–Butler (hereinafter 'Mrs. Butler') was involved in a motor vehicle accident with Mr. James Tidd (hereinafter 'Mr. Tidd'). Mrs. Butler sustained injuries as a consequence of the motor vehicle accident. On September 20, 1999, Mrs. Butler and her husband, Gary Butler (hereinafter 'Mr. Butler') retained Respondent to pursue their claims against Mr. Tidd arising from the motor vehicle accident.

"A written Retainer Agreement was signed by Mr. and Mrs. Butler on September 20, 1999, providing for Respondent to receive a contingent legal fee of one-third (1/3) of the total recovery obtained by way of settlement or forty percent (40%) of the total recovery obtained by settlement or judgment after suit was filed as payment for her legal services on their behalf.

"Mr. Tidd was insured by Amica Mutual Insurance Company (hereinafter 'Amica'). Nationwide Insurance Company insured Mr. and Mrs. Butler. After consultation, the Butlers informed the Respondent that they would agree to a sum of not less than ten thousand dollars ($10,000.00) to

---

(d) engage in conduct that is prejudicial to the administration of justice[.]"

fully settle their claims against Mr. Tidd and Amica. Respondent, on behalf of the Butlers, and Amica discussed settlement of the claims. The Respondent demanded over $20,000.00 for settlement of the Butlers' personal injury claim. Amica, in turn, extended a settlement offer of $9,500.00. Unfortunately, Respondent and Amica were unable to reach a settlement. During the period of representation, however, the Respondent successfully negotiated the settlement of the property damage claim resulting from the motor vehicle accident.

"On August 12, 2002, the Respondent filed a Complaint, *Butler v. Tidd* (hereinafter 'Butler Complaint'), in the Circuit Court for Prince George's County against Mr. Tidd for negligence and loss of consortium and Nationwide Insurance Company for uninsured/underinsured motorist and personal injury protection claims on behalf of Mr. and Mrs. Butler. The Butler Complaint was filed two months before the Statute of Limitations tolled. Simultaneously with the submission of the Butler Complaint, the Respondent submitted another Complaint, *Brown v. Austin* (hereinafter 'Brown Complaint'), in the Circuit Court for Prince George's County Maryland. Although the captions on these two Complaints were different, the Clerk's Office mistakenly assigned the two Complaints the same case number—CAL02–19945. The Brown Complaint was the only Complaint that the Clerk's Office showed a record for having been properly filed and docketed.

"The Respondent did not recognize the mistake made by the Clerk's Office until, on or about, October 28, 2002, when she received a letter from Mrs. Kimberly Massey, an adjuster with Amica, acknowledging receipt of the Butler Complaint and requesting verification of the date in which the summons and Complaint was filed in the Butler case. The letter also advised the Respondent that the case number provided did not correspond with the plaintiffs and defendants in the Butler Complaint.

"Respondent acknowledges that two checks were issued, by her office, in the amount of $100 on August 12, 2002: one

check, Check No. 1413, drawn from her escrow account for the filing of the Brown Complaint and another check, Check No.1910, drawn from her operating account for the filing of the Butler Complaint. Check No. 1413 was negotiated by the Prince George's County Circuit County Clerk's Office on August 15, 2002. The Respondent received a returned copy of Check No. 1413 with her August 2002 bank statement. Check No.1910, which was written for the filing fees associated with the Butler Complaint was never negotiated by the Clerk's Office.

"Upon learning of this error, on or about, October 28, 2002, Respondent contacted the Clerk's Office to determine what actions would be necessary to correct the error. The Respondent was advised by the Clerk's Office that she needed to submit the file stamped copy of the Butler Complaint and the cancelled check for the filing fee. It was at this time that Respondent became aware that Check No.1910 was never negotiated. The Statute of Limitations had expired on the Butlers' claim at that time.

"On November 9, 2002, the Respondent sent a letter to the attorney for Amica, Timothy E. Howie, Esquire, indicating that the Statute of Limitations had passed on the Butlers' claim before the error was brought to her attention and he could 'close [his] file on this claim.' Thereafter, the Respondent agreed to sign and present to the court a joint Line of Dismissal With Prejudice in the Butler case. This line of dismissal was filed on January 9, 2003.

"The Respondent did not advise Mr. or Mrs. Butler of the error that occurred with the filing of their Complaint. The Respondent did not advise Mr. or Mrs. Butler that their case was dismissed with prejudice and that the Statute of Limitations now barred their claim. Furthermore, the Respondent did not consult with either Mr. or Mrs. Butler regarding the dismissal of their Complaint with prejudice nor did she receive their consent to dismiss their claim.

"The Respondent then decided that she would not disclose the dismissal of the claim to her clients, the Butlers. Rather she would attempt to make them whole by paying them

what she thought would placate them and what she perceived to be fair to them, *i.e.*, the sum of $10,000.00 out of her own personal funds. It was also at this time that the Respondent sought the legal and ethical advice of N. Frank Wiggins, Esquire (hereinafter 'Mr. Wiggins').

"Mr. Wiggins, at the time, was a partner at the law firm of Venable, Baetjer, Howard and Civiletti. He is a 1972 graduate of the University of Michigan Law School. He taught at Northwestern University Law School for three years. The Respondent worked for Mr. Wiggins at his previous law firm, Cohn and Marks, for approximately four and one-half years. Over the years, the Respondent and Mr. Wiggins have maintained personal contact with one another, often consulting with each other on legal matters. In addition, Mr. Wiggins represented the Respondent in *Attorney Grievance Commission v. Pennington*, 355 Md. 61, 733 A.2d 1029 (1999). Mr. Wiggins is not admitted to practice law in the State of Maryland. He is *only* admitted to practice law in the District of Columbia.

"The Respondent advised Mr. Wiggins of the events that transpired and sought his counsel and advice on her plan to pay the Butlers from her own personal funds. Specifically, Respondent sought reassurance from Mr. Wiggins that her payment to her clients out of her personal funds and her nondisclosure of the facts would not in any way violate any laws or rules of ethical conduct in Maryland, or otherwise cause any problems for her or the Butlers. After researching the matter, Mr. Wiggins opined incorrectly to the Respondent that no disclosure was required.

"On February 6, 2003, the Respondent met with Mr. and Mrs. Butler. During this meeting, the Respondent presented the Butlers a document entitled 'Statement of Settlement.' The Respondent did not disclose to the Butlers that the check they would receive would not come from the settlement of their case but, instead, directly from the Respondent's own funds. The 'Statement of Settlement' presented to the Butlers was derived from a form that Respondent customarily utilized when she disbursed funds

obtained through settlement of claims with third parties for the benefit of her clients. In fact, the Butlers were presented with a similar 'Statement of Settlement' in September 29, 1999, relating to their settlement of the property damage claim with Amica.

"The 'Statement of Settlement' presented to the Butlers on February 6, 2003, although substantially similar to the September 29, 1999 statement, contained two modifications. The lines designating 'Insurance Company' and the 'Personal Injury Claim' were purposefully omitted by the Respondent from the 'Statement of Settlement.' The Statement indicated that the Respondent earned and received $4,000 in attorney's fees and $41.65 in expenses, and that $1,828.92 was deducted from the 'Client's Net Proceeds' for medical expenses and $375 was deducted for 'Gary Butler' for his loss of consortium claim, for a balance of $3,753.43 to Mrs. Butler.

"After consultation and consent from Mr. and Mrs. Butler, the Respondent attempted to reduce Mrs. Butler's medical expenses. On May 9, 2003 and August 14, 2003, the Respondent sent letters to Metro Orthopedics & Sports Therapy (hereinafter 'Metro Orthopedics') requesting a reduction of its invoice because '[u]nder the terms of settlement, offered by the third party, Ms. Butler will receive virtually no compensation for her injuries if the subject invoice is not reduced.' In all, Mrs. Butler's outstanding medical bills of $1,828.92 were reduced by $160 of which 66 2/3% of this amount was paid to the Butlers.

"Mrs. Butler testified at the hearing in this case on December 8, 2004 that she believed that, based on the 'Statement of Settlement,' her case was still viable and that her case had settled with Amica and the check she received in the amount of $3,753.43 was originally from Amica. Nevertheless, Mrs. Butler, even after being apprised of the situation, stated she was satisfied with the services the Respondent provided and that she would retain her to perform legal services in the future, if needed.

"After investigating the matter, the Attorney Grievance Commission through Bar Counsel filed a Petition for Disciplinary Action against Respondent. This Court discovered at the hearing on December 8, 2004 that this matter was brought to the attention of the Attorney Grievance Commission through a Complaint filed by Amica Mutual Insurance Company.

## IV. Conclusions of Law

"Respondent, without disputing the material facts of the case, testified that she (1) did not recognize the error made by the Clerk's Office until after the Statute of Limitations had expired on the Butlers Complaint; (2) did notify Amica's attorney, Timothy Howie, to close his file on the Butlers Claim and then without consulting with the Butlers entered into a Joint Line of Dismissal with Prejudice on their claim; (3) did not notify the Butlers that the Statute of Limitations had expired and that they no longer had a viable claim; (4) presented the Butlers with a 'Statement of Settlement' and a settlement check paid out of her own funds; and (5) sent a letter to Metro Orthopedics that represented that there was a settlement in Mrs. Butler's claim in an effort to reduce her medical bills. Therefore, the factual predicate for this Petition is established by clear and convincing evidence. The specific violations of the Maryland Lawyer' Rules of Professional Conduct alleged are addressed below.

### A. Rule 1.1 Competence

"Petitioner complains that the Respondent was incompetent in ensuring that the Butler Complaint was independently filed and docketed with the Court. Petitioner avers that thoroughness and preparation are necessary in order to competently represent a client and that proper management of case files is included in that requirement. Furthermore, Petitioner contends that the Respondent should have had a proper system in place to process client matters and management of her files, including assuring the proper filing of Complaints. The Petitioner suggests that, if such a system

were in place, the Respondent would have realized that the parties recorded by the Clerk's Office in the Butler Complaint did not correlate with that in the actual Complaint itself. She would also have discovered on her own that the Butler Complaint was never properly filed and docketed by the Clerk's Office. In addition, Respondent would have been aware that the check her office issued to the Clerk of the Court for the filing fee of the Butler Complaint was not negotiated. If Respondent had noticed these irregularities, she might have clarified the record of the filing of the Butler Complaint prior to the expiration of the applicable Statute of Limitations.

"Respondent argues that the clerical error by the Clerk of the Circuit Court was not a legal mistake by the Respondent and that there is no evidence in the record that would suggest that a minor personal injury case was beyond the competency level of the Respondent.

"This Court agrees with the Respondent on that limited point. Rule 1.1, however, is not limited in scope to legal knowledge and skill. Specifically, Rule 1.1 provides that '[c]ompetent representation requires the legal knowledge, skill, thoroughness **and preparation** reasonably necessary for the representation.' (Emphasis added). '[W]hether the representation the lawyer gives is incompetent or is merely careless or negligent depends upon what reasonably is necessary in the circumstances, *i.e.*, the facts and circumstances of the particular case.' *Attorney Grievance Commission of Maryland v. Kemp,* 335 Md. 1, 10, 641 A.2d 510, 514 (1994).

"This Court finds in this case that, if the Petitioner had maintained an appropriately efficient and reliable system to process her client's matter and manage her case files, the Clerk's Office error would have been discovered prior to the Statute of Limitations expiring. The failure of the Respondent to notice that the Butler Complaint and the Brown Complaint were assigned the same case number and that the check from the Butler Complaint was not negotiated by the Clerk's Office was a result of not having such a system

in place in her office, not merely negligent or careless oversight in this particular case. '[T]he thoroughness and preparation reasonably necessary for competent representation includes the proper management of case files.' *Attorney Grievance Commission v. Ober,* 350 Md. 616, 630, 714 A.2d 856, 863 (1998).

"Therefore, this Court concludes that the Petitioner established by clear and convincing evidence that Respondent exhibited incompetence in handling the Butlers' case.

## B. 1.2 Scope of Representation

"Rule 1.2 provides that '[a] lawyer shall abide by a client's decisions concerning the objectives of representation, ... and, when appropriate, shall consult with the client as to the means by which they are to be pursued. The lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.'

"Initially, the Respondent was given a clear directive by the Butlers to seek not less than $10,000.00 as settlement of their claims. Ms. Pennington pursued this amount during the negotiations with Amica both before and after the filing of the Butler Complaint. Despite the Respondent's efforts, the nature of the Butlers claim changed after the Clerk's Office error was discovered, the Statute of Limitations had run on their claim, and the dismissal of their claim without consultation or consent of the Butlers. At this point, the Petitioner is correct in contending that the personal injury claimed changed to a possible malpractice claim against the Respondent. Mrs. Butler testified and Respondent agrees that settlement for $10,000.00 was to be with Amica. The Butlers were never provided the necessary information to leap to the conclusion that they would have settled with the Respondent in a malpractice suit for the same amount.

"The Respondent did not and could not rely on the Butlers' decision to accept an offer of settlement for $10,000.00 as a means of 'making her clients whole' because there was no settlement offer to be accepted. The Butlers clearly did not give the Respondent the authority to settle a

possible malpractice claim against her because they were not alerted to the facts that would give rise to such a claim.

"For these reasons, this Court concludes that Petitioner established by clear and convincing evidence, that Respondent violated this Rule.

### C. Rule 1.3 Diligence

"The Petitioner contends that the Respondent was not diligent in her representation of the Butlers because of her failure to assure proper filing of the Butlers' Complaint. The Respondent argues that the only lack of diligence is the failure to discover the lack of diligence of the employee of the Clerk's Office in carrying out his or her appointed duties. Further, the Respondent argues that at most the failure to make this discovery can be characterized as negligent or careless.

"Rule 1.3 requires the lawyer to 'act with reasonable diligence and promptness in representing a client.' This Court finds that the failure to discover the error made by the Clerk's Office was in fact a violation of Rule 1.3. It is the responsibility of the attorney to ensure that the Complaints they file on behalf of the client are filed properly. *See Attorney Grievance Commission v. Granger,* 374 Md. 438, 823 A.2d 611 (2003).

"In this matter, Mrs. Butler suffered medical conditions that required that settlement negotiations be delayed until a determination was made as to whether or not those medical conditions were the result of the motor vehicle accident that Mrs. Butler was involved. However, once suit was filed the Respondent was aware of the fact that the Statute of Limitations would soon be expiring. The Respondent had an affirmative duty to ensure that the Complaint was properly filed and docketed and not allow the Statute of Limitations to expire on their claim.

"Thus, the Petitioner has proven through clear and convincing evidence that the Respondent violated this Rule.

## D. Rule 1.4 Communication

"There appears to be no dispute that the Respondent violated Rule 1.4(a). The facts clearly indicate the Respondent did not disclose to her clients the error made by the Clerk's Office, that their case was dismissed with prejudice after the Statute of Limitations had expired, and that they no longer had a viable personal injury claim. These undisputed facts alone provide clear and convincing evidence to this Court that Respondent violated Rule 1.4(a).

"However, there is a dispute as to whether the Respondent violated Rule 1.4(b). The Respondent contends that, because the Butlers had stated that they would be satisfied to settle their claim for $10,000.00, no additional information was ethically required to be imparted to the Butlers to allow them to make informed decisions regarding the settlement. This Court disagrees. The Butlers did not know the circumstances surrounding their case or the source of the purported 'settlement' checks. The Butlers assumed that the settlement checks were from Amica. The Respondent never disclosed the actual source of the funds or the true circumstances and status of their case after it was dismissed with prejudice. The proper course of action would have been for the Respondent to disclose to the Butlers the status of their case and advise them to seek independent counsel. Only in this situation would the Butlers have been reasonably informed to make an informed decision in this matter.

"This Court therefore concludes by clear and convincing evidence that both provisions of Rule 1.4 were violated.

## E. Rule 1. 7(b) Conflict of Interest: General Rule

"A conflict of interest arises when the economic interests of a lawyer are at odds with those of the client. *See Attorney Grievance Commission v. Roberson,* 373 Md. 328, 818 A.2d 1059 (2003). The Respondent provides, by way of example in her brief, the most obvious situation where a lawyer purports to represent both sides in a dispute. While this is the most obvious and probably the most common, it

does not present a complete picture of the conflicted relationships the Rule addresses. *See Rule 1.7 Comments.*

"The initial engagement of the Respondent by the Butlers did not present a conflict of interest. However, an economic conflict of interest between the Respondent and the Butlers arose as soon as the Butlers' Complaint was dismissed with prejudice.

"The Respondent argues that a conflict occurs when an event is economically detrimental to a client is economically beneficial to the lawyer. That is correct and this case provides an illustration of such a situation. The Butlers were injured because their lawyer never provided them the information necessary to determine if they wanted to accept a settlement offer from the Respondent or pursue their claim against her through a legal malpractice action. The Respondent was benefitted economically because she avoided the costs and expenses of defending a possible malpractice claim that was available to the Butlers.

"Despite the Respondent's failure to acknowledge a possible malpractice claim, the fact remains that, once the Joint Dismissal was filed in this case, the malpractice claim became a reality. The Respondent's successful attempt to placate the Butlers by providing what appeared to be a gross recovery of $10,000.00 from her own personal funds is not sufficient to eliminate, or even mitigate, the conflict. This cannot represent the amount that would have been recovered in a malpractice claim.

"The Respondent further argues that, because the Butlers received what they anticipated, there was no injury. The fact remains that the Butlers were deprived of the potential malpractice claim and that, in this Court's view, is a substantial injury to the client. *See Graves v. State of Maryland,* 94 Md.App. 649, 619 A.2d 123 (1991[1993]).

"The Respondent's argument is further without merit because even if she did not believe a conflict of interest existed, under the Rule she had an affirmative duty to disclose the facts to the client, advise them of their right to seek independent counsel, and obtain a consent before rep-

resentation of the clients could proceed any further. There is no evidence in the record that reflects that these mandates of the Rule were followed.

"This Court concludes that there is clear and convincing evidence that there was a violation of Rule 1.7.

## F. Rule 1.16(a)(1)

"This Rule merely provides that 'a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct or other law.' For the reasons previously stated, Respondent clearly violated this Rule because she failed to withdraw from representation of the Butlers after her representation gave rise to their cause of action against her.

## G. Rule 8.4 Misconduct

"The Petitioner complains that the Respondent has violated Rule 8.4(c) and 8.4(d). Respectively, these provisions find that a lawyer engages in professional misconduct if a lawyer: 'engage[s] in conduct involving dishonesty, fraud, deceit or misrepresentation' and 'engage[s] in conduct that is prejudicial to the administration of justice.'

"The Petitioner alleges that the Respondent, in an attempt to make it appear like the purported 'settlement' checks were from Amica, prepared and presented a 'Statement of Settlement' that was almost identical to the Statement of Settlement presented to them back in 1999 for the settlement of their property damage claim. This, the Petitioner adds, is a perfect example of an overt act designed to mislead the clients.

"It is undisputed that the Respondent never disclosed the facts surrounding the dismissal of the case to the Butlers, that the Respondent never communicated to them the source of the funds used to 'make them whole' and, in addition, that the Respondent negotiated a reduction of Mrs. Butler's medical expenses by representing to certain

health care providers that there was a possible settlement in this matter.

"The Respondent contends that her actions were not intentional or willful and thus could not been viewed to violate Rule 8.4(c) and (d). This Court simply does not believe that Respondent did not intend the natural consequences of her action and nonaction, especially when the Respondent testified that she never wanted the Butlers to become aware of the source of the funds or the status of their claims. Intentional fraud can be sustained by means of concealment. *Attorney Grievance Commission v. Clements,* 319 Md. 289, 572 A.2d 174 (1990); *See also Attorney Grievance Commission v. Pinkney,* 311 Md. 137, 532 A.2d 1367 (1987) (Respondent prepared fictitious pleadings to give her client the impression that her case was filed in court, when in fact, she had failed to do so.) The act of concealment is exactly the conduct of the Respondent in this matter.

"The Respondent argues an independent defense of reliance of counsel to not only the misconduct claims but also the conflict of interest claim. The Respondent consulted with Mr. Wiggins and was incorrectly advised by him that she could proceed with providing the Butlers $10,000.00 from her own funds without disclosing to the Butlers the source of the funds or the circumstances of their distribution. To support this contention, the Respondent relies on the following cases: *United States v. Peterson,* 101 F.3d 375, 381 n. 4 (5th Cir.1996) and *Manown v. Adams,* 89 Md.App. 503, 514, 598 A.2d 821, 826 (1991). However, reliance on these cases is misplaced.

"In *Peterson,* the Court clearly held that 'good faith reliance on counsel is not a defense to securities fraud. It is simply a means of demonstrating good faith and represents possible evidence of an absence of any intent to defraud.' 101 F.3d at 382.

"In *Adams,* the Court specifically states that '[i]t is true that reliance on an attorney's advice may, in a civil action, negate wrongdoing where the advice has been based on full

disclosure of the relevant facts.' 78[89] Md.App. at 514, 598 A.2d at 826 citing *Derby v. Jenkins,* 32 Md.App. 386, 391, 363 A.2d 967 (1967[1976]). The Court continues, however, that '[t]his rule allows **lay people** to rely on an attorney's ability to "view the facts calmly and dispassionately" and to "judge the facts in their legal bearings." ' (Emphasis added). *Adams* at 78[89] Md.App. at 514, 598 A.2d at 826 (citing *Derby v. Jenkins,* 32 Md.App. 386, 391, 363 A.2d 967 (1967[1976])). It is clear that in these cases the Court was not presented with a situation where an attorney relied on the advice of counsel and that these cases do not deal with disciplinary actions. Furthermore, the bar is set higher for an attorney then a layperson.

"Attorneys admitted to practice in the state of Maryland are 'deemed to know the Rules of Professional Conduct and have the obligation to act in conformity with those standards as a requirement to practice law.' *Attorney Grievance Commission v. Stein,* 373 Md. 531, 543–544, 819 A.2d 372, 379 (2003) (citing *Attorney Grievance Commission v. Jeter,* 365 Md. 279, 292, 778 A.2d 390, 397 (2001)).

"This Court could find no Maryland case law in which good faith reliance on advice of counsel was an affirmative defense in a disciplinary action. However, the Court of Appeals has rejected the defense of a respondent's claim of reliance on the advice of an ethics opinion or a certified public accountant. *See Attorney Grievance Commission v. Gregory,* 311 Md. 522, 536 A.2d 646, 651 (1988); *Attorney Grievance Commission v. Gavin,* 350 Md. 176, 711 A.2d 193, 202 (1998). As such, the Respondent, in this Court's opinion cannot rely on the good faith reliance on the defense of counsel as this is not the rule in Maryland.

"Some jurisdictions have affirmatively held that the good faith reliance on the advice of counsel is never defense in a disciplinary action. *See People v. Katz,* 58 P.3d 1176, 1187 (Co[lo].2002) ('It is the individual attorney's duty and obligation to comply with Rules of Professional Conduct. The attorney may not delegate that duty or responsibility to another under the umbrella of advice of counsel and thereby

create a defense to a violation of those rules.'); *Conduct of Gatti,* 330 Or. 517, 526, 8 P.3d 966, 972–973 (Or.2000) ('advice from disciplinary counsel is a not a defense to a disciplinary violation.')

"Furthermore, the Respondent's argument is further negated since the advice relied upon was from Mr. Wiggins, an attorney with no familiarity with the Maryland Rules of Professional Conduct and who is not admitted to practice law in Maryland.

"Finally, the Respondent contends that even if good faith reliance on the advice of counsel is not a complete defense, then it should stand as a mitigating factor. The factors recognized by Maryland Courts as mitigating circumstances in disciplinary matters are:

> 'absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.'

*Attorney Grievance Commission v. Thompson,* 367 Md. 315, 330, 786 A.2d 763, 772–73 (2001) (quoting *Attorney Grievance Commission v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001) (in turn quoting *Attorney Grievance Commission v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996) (citations omitted)).

"It is the province of this Court to 'make findings in regards to facts that it believes mitigate in respect to the conduct of a respondent in attorney discipline matters.' *Attorney Grievance Commission v. Vanderlinde,* 364 Md. 376, 384, 773 A.2d 463, 467 (2001). Moreover, this Court 'is to bring what it believes to be mitigating circumstances, in respect to the conduct involved, to the attention of [The Court of Appeals], not to offer its views as to whether any

such circumstance, or the lack of any such circumstances, justifies any lesser or greater sanction.' *Vanderlinde,* 364 Md. at 384, 773 A.2d at 467. In discharging this responsibility, this Court brings to the attention of the Court of Appeals its finding that the Respondent in good faith relied on the incorrect advice provided to her by Mr. Wiggins and, because of that reliance, did not impart to the Butlers information about the status of their claims or the source of the funds that they received. Furthermore, during the hearing, Respondent displayed a high degree of remorse for her actions. These actions should therefore be considered as mitigating factors when fashioning any sanction.

"This Court concludes that clear and convincing evidence was presented that the Respondent violated this Rule 8.4(c) and (d). Furthermore, the Respondent has failed to show by a preponderance of the evidence that good faith reliance on the advice of counsel is an affirmative defense to the claims of misconduct and conflict of interest. This Court does conclude that the good faith reliance on advice of counsel as a mitigating factor was sufficiently proven by the preponderance of the evidence.

### V. Summary

"Respondent violated seven separate Rules of Professional Conduct. Each of these violations compounded a situation resulting from the Respondent's failure to notice an error made by the Clerk's Office for Circuit Court for Prince George's County. Nothing in this proceeding evidenced Respondent's lack of knowledge or understanding of the law, or her inability to represent clients competently.

"Respondent has practiced alone for a considerable period of time. While the Court of Appeals must determine whether and to what extent the Respondent is deserving of discipline, your Chancellor respectfully suggests that a suspension of 120 days and a probationary period under the tutelage of a capable lawyer with strong administrative skills would prove beneficial to the Respondent and her future clients."

## II.

Both parties have filed exceptions to the findings and conclusion of the hearing judge. The hearing judge's findings of fact are *prima facie* correct and will not be disturbed unless clearly erroneous. *Attorney Grievance v. Ellison,* 384 Md. 688, 707, 867 A.2d 259, 270 (2005). When the findings are not clearly erroneous, exceptions will be overruled. *Id.* Our review is *de novo* as to the hearing judge's conclusions of law. *Id.*

### A. Respondent's Exceptions

The Circuit Court found that respondent violated Rules 1.1 Competence, 1.2(a) Scope of Representation, 1.3 Diligence, 1.4 Communication, 1.7(b) Conflict of Interest, 1.16(a)(1) Withdrawal from Representation and 8.4(c) and (d) Misconduct. Respondent excepts to these findings.

Respondent's overarching defense before this Court, and underlying the most serious of her exceptions, is that she relied on the advice of counsel and that all charges should be dismissed. The hearing judge, noting that this Court has not addressed the applicability in attorney disciplinary proceedings of the affirmative defense of reliance on advice of counsel, began with the black letter proposition that all attorneys admitted to practice in Maryland are presumed to know the law, and concluded that such a defense is not available to an attorney in disciplinary actions. Determining that Maryland law does not allow for an affirmative defense of reliance on advice of counsel in attorney discipline matters, the hearing judge also found that respondent could not rely on the defense because the advice she relied upon was from "an attorney with no familiarity with the Maryland Rules of Professional Conduct and who is not admitted to practice law in Maryland."

The closest this Court has come to addressing reliance on advice of counsel as a defense in an attorney grievance case is in *Attorney Griev. Com'n v. Gregory,* 311 Md. 522, 536 A.2d 646 (1988), where the attorney argued that his misconduct should be excused because he acted in reliance upon a formal

ethics opinion of the Committee on Ethics of the Maryland State Bar Association. Although this Court rejected Gregory's argument because he, in fact, was not relying upon an opinion that dealt with the circumstances of his misconduct, we went further and stated "that an opinion of the Ethics Committee of the Bar Association is advisory, and is not binding on this Court." *Id.* at 531–32, 536 A.2d at 651. We stated as follows:

"As a practical matter, however, where an attorney can demonstrate reasonable reliance upon an ethics opinion on point, that fact is likely to have a significant effect on the initial decision of the Attorney Grievance Commission concerning the filing of a complaint, as well as upon the determination or disposition of those charges that may be filed."

*Id.* Finally, we pointed out that this general principle may be modified by rule or statute, as is the case with Md. Rule 1231 creating a Judicial Ethics Committee, now encompassed within Md. Rule 16–813, which provides protection to a judge who complies with an opinion issued by that committee. *Id.* at 531 n. 6, 536 A.2d at 651 n. 6.

Maryland law does recognize the defense of reliance on the advice of counsel in some cases. *See, e.g., Brashears v. Collison*, 207 Md. 339, 349–51, 115 A.2d 289, 294–95 (1955). Relying on *Brashears*, the Court of Special Appeals, in *VF Corp. v. Wrexham Aviation*, 112 Md.App. 703, 686 A.2d 647 (1996), *aff'd in part and rev'd in part*, 350 Md. 693, 715 A.2d 188, held that reliance on advice of counsel is a defense in a fraud case as it bears on scienter. *VF Corp.*, 112 Md.App. at 716, 686 A.2d at 654. "Scienter is the intent to defraud or deceive." *Id.* at 715, 686 A.2d at 653. Writing for the unanimous panel, Chief Judge Robert Murphy, later Chief Judge of this Court, stated as follows:

"To prevail on an advice of counsel defense, however, appellants were required to persuade the jury (1) that they communicated to counsel all facts they knew or reasonably should have known; and (2) that they relied in good faith upon the advice given."

*Id.* at 716, 686 A.2d at 654; *see also United States v. Butler*, 211 F.3d 826, 833 (4th Cir.2000). Common expressions of the necessary elements to establish an advice of counsel defense have fleshed out the requirements stated by the *VF Corp.* court as follows:

> "To establish the advice-of-counsel defense, the party raising it must show that: (1) he is acting in good faith in the belief that he has good cause for his action and is not seeking an opinion in order to shelter himself; (2) he has made a full and honest disclosure of all the material facts within his knowledge or belief; (3) he is doubtful of his legal rights; (4) he has reason to know that his counsel is competent; (5) he honestly complied with his counsel's advice; and (6) his counsel is of such training and experience that he is able to exercise prudent judgment in such matters."

*G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 571 N.E.2d 1363, 1371 (1991); *see also Liss v. United States*, 915 F.2d 287, 291 (7th Cir.1990).

The affirmative defense of reliance on the advice of counsel arises most commonly in tax cases and in cases which require specific intent. Many courts have held that the defense is *only* available as against specific intent crimes. *See e.g., United States v. Cross*, 113 F.Supp.2d 1253, 1264 (S.D.Ind. 2000) (holding that advice of counsel is no defense to the general intent crime of operating an illegal gambling business because the defendant's specific intent or knowledge was not an essential element of crime); *United States v. Dyer*, 750 F.Supp. 1278, 1293 (E.D.Va.1990) (stating that "[i]n general, an advice of counsel defense applies only where the violation requires proof of specific intent, that is, proof that a defendant has actual knowledge that his conduct is illegal"); *United States v. Soares*, 998 F.2d 671 (9th Cir.1993) (affirming the district court's decision that an offense under 18 U.S.C. § 1954 was not a specific intent crime and, therefore, the defendant could not offer an advice of counsel defense); *United States v. Carr*, 740 F.2d 339, 346 n. 11 (5th Cir.1984) (stating that "[s]trictly speaking, good faith reliance on advice of counsel is

not really a defense to an allegation of fraud but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent"). The reason given as underlying this limitation is that the defense is deemed relevant to negate proof of a defendant's intent to violate the law.

The defense of reliance on advice of counsel was raised by an attorney in a disciplinary matter in Colorado. *See People v. Katz*, 58 P.3d 1176 (Colo.2002). The attorney was charged with violating Colo. R. Prof. Conduct 8.4(c), based on allegations that he withdrew money from a joint account without the knowledge or consent of the firm with whom he collaborated. Katz argued, *inter alia*, that he relied on the advice of counsel that he could withdraw the funds in question, and that in so doing, he could not be held to have violated the Rules of Professional Conduct. *Id.* at 1187. Disbarring the errant attorney, the Colorado Supreme Court rejected his argument, on two grounds.

"First, it is presumed that Katz—as an attorney himself— understands and will adhere to the Rules of Professional Conduct. It is the individual attorney's duty and obligation to comply with the Rules of Professional Conduct. The attorney may not delegate that duty or responsibility to another under the umbrella of advice of counsel and thereby create a defense to a violation of those Rules. Second, the facts of this case established that Katz withheld material information from Wollins during the discussion in which Katz contends the legal advice was provided. Absent full, fair and honest disclosure of all known relevant information concerning the issue, the advice of counsel defense is not available ."

*Id.* at 1187 (citations omitted).

■ Respondent's reliance on advice of counsel from Mr. Wiggins, a lawyer not admitted to practice in the State of Maryland, is not a defense to her violations of Rule 8.4(c) and (d) Misconduct, or to Rule 1.7(b) Conflict of Interest, or, for that matter, any of her conduct in this case. As a member of the Bar of this State, respondent took an oath to comply with

the Rules of Professional Conduct and to act in conformity with those standards. *See Attorney Grievance v. Stein,* 373 Md. 531, 542, 819 A.2d 372, 379 (2003). The hearing judge found, by clear and convincing evidence, that she never disclosed the true facts of the dismissal to her clients, that she never communicated the source of the funds to her clients, and that she created and presented a settlement sheet to her clients that could only have created an impression by them that the case had settled. As the Colorado court stated well, an attorney may not delegate the responsibility to another under the umbrella of advice of counsel and thereby create a defense to a violation of the Rules of Professional Conduct. Every lawyer in this State should know that the misrepresentation to the client that occurred in this case was a violation of the Rules.

Moreover, even if the defense were applicable generally to attorney discipline matters, respondent's attempt to raise the defense would fail. First, misrepresentation under Rule 8.4(c) and conduct prejudicial to the administration of justice under (d) do not require specific intent. Second, respondent consulted a lawyer not admitted to practice law in this State, and, given her deceitful conduct, she could not have believed, in good faith, her conduct was proper. Finally, a predicate for establishing the defense is that the party asserting the defense establish that she has made a full and honest disclosure of all the material facts within her knowledge or belief. There is absolutely no evidence in this record, either from respondent or Mr. Wiggins, that respondent advised Mr. Wiggins that she intended to present a "statement of settlement" form to the clients.[9] As the hearing judge found, this form, similar

---

9. The transcript indicates that respondent told Mr. Wiggins of the following facts during a telephone conversation:

"I told Mr. Wiggins that I represented Mr. Butler and Mrs. Butler in an automobile accident. That I had filed suit in August of 1999. That I had learned from the insurance company that the suit was not accepted by the Clerk properly. That Mr. Butler had authorized or directed me to accept $10,000 to settle their respective claims. That the statute of limitations ran on September the 14th or 15th of [2002],

to the one respondent used with this client in a prior case, clearly created an impression that the case was settled. This misrepresentation to the client is at the heart of respondent's misconduct, and there is no evidence that Mr. Wiggins approved this conduct. Moreover, even if he did, for the reasons we have stated, it would not be a defense to the Rule violations.

The argument underlying most of respondent's other exceptions is that the Butlers could not have filed a malpractice suit against her, and, therefore, she was not required to disclose to the Butlers the true nature of the "settlement" or to suggest that they retain independent counsel. Respondent argues that since the Butlers had determined their claims to be worth $10,000, the Butlers suffered no damage by her $10,000 "settlement" with them. This argument fails to consider that the Butlers' willingness to settle for $10,000 is not determinative of the value of their claims. Respondent, acting on the Butlers' behalf, sought a settlement of $20,000, rejected Amica's $9,500 settlement offer, and filed a lawsuit seeking $100,000. Respondent could not determine the value of the Butlers' claims unilaterally. We overrule these exceptions.

---

and that I had decided that I wanted to pay them. And I shared with him a little bit about why (unintelligible) ... And I told him about that after the statute had expired. And that I wanted to make her whole. I wanted to make them both whole. And I wanted to know whether there was anything wrong with that, giving them my money."

Respondent testified as to the advice she received from Mr. Wiggins. "He called me back and told me that, as I said, he had done a fair amount of research, actually, had read the Maryland Code Section on Professional Responsibility, the Rules. And had done, had read a lot of the cases cited in those Rules. And concluded that there was absolutely no problem, whatsoever, with my giving Mrs. Butler and Mr. Butler the money. And that was my main issue. That was one of the major one, or at least equal ... And, two, that there was no reason, either, to disclose the source. That means that I was giving them the money. And anything related to this, the Clerk's error, and the consequences that flowed from the Clerk's error."

Mr. Wiggins' testimony as to the substance of the conversation with respondent conforms to respondent's testimony. His testimony made no reference to respondent's intent to present a "Statement of Settlement" form.

Respondent excepts to the hearing judge's conclusion that her letter to Metro Orthopedics seeking a reduction of medical charges stated that the Butlers had accepted a settlement. She claims instead that the letter stated that the Butlers had received a settlement offer. We overrule this exception. Although respondent did not represent that the Butlers had accepted a settlement, this fact is beside the point. Respondent's letter was written after the Butlers' claim was dismissed, but she nonetheless referred to the settlement offer, and stated that a medical fee reduction "will facilitate an expeditious resolution of the subject third party claim."

■ Respondent excepts to the hearing judge's conclusion of law that she had violated Rule 1.4(a). Respondent argues that her failure to disclose the clerk's error or the dismissal of the case was warranted because she feared that Mrs. Butler, a client with whom she had developed a friendship, would feel some remorse or discomfort in taking money from respondent. Respondent relies upon the term "reasonably informed" in Rule 1.4, arguing that her decision not to disclose was reasonable.

The Comment to Rule 1.4 discusses the appropriateness of withholding information. The Comment states as follows: "*Withholding information.*—In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience...."

Respondent did not merely *delay* disclosure to the Butlers. Instead, she executed a "settlement" with them and, according to her testimony, intended that they not learn of the dismissal of the suit. Moreover, the Comment makes clear that a lawyer may not withhold information to serve the lawyer's own interest. As the hearing judge found, respondent's failure to provide the Butlers with the information regarding the

dismissal deprived them of the information necessary to determine if they wished to pursue a malpractice claim against her. Her conduct violated Rule 1.4.

■ Respondent presents several exceptions to the hearing judge's findings of fact. Respondent excepts to the hearing judge's description of settlement negotiations with Amica as basically correct but "too terse to convey the full flavor of the history it addresses." We overrule this exception. The hearing judge is not required to set out all the facts in his findings and may select those deemed relevant and appropriate. *See Attorney Grievance v. Zdravkovich*, 381 Md. 680, 694, 852 A.2d 82, 90 (2004) (quoting *Attorney Grievance v. Stolarz*, 379 Md. 387, 398, 842 A.2d 42, 48 (2004), for the proposition that the "hearing judge as the trier of fact may elect to pick and choose which evidence to rely upon"). Respondent excepts to the hearing judge's finding as to the timing of the filing of the complaint. We accept respondent's correction and find that the complaint was filed on August 12, 2002. Respondent excepts to the hearing judge's finding that she did not consult with the Butlers before seeking dismissal of their case with prejudice or advise them of her actions afterwards. Respondent represents that the Butler case was not dismissed with prejudice, but rather the complaint and all pleadings were returned to the parties and the line of dismissal was never acted upon. We overrule this exception. Respondent was asked repeatedly at the hearing about the "line of dismissal," and she never controverted this fact. In fact, she authenticated petitioner's exhibit no.14 as the line of dismissal, and it was received into evidence without objection. The line of dismissal, signed by respondent, is entitled *"LINE OF DISMISSAL WITH PREJUDICE "* and asks the clerk to enter the claim as "dismissed *WITH* prejudice." Respondent excepts to two findings related to respondent's decision to consult with Mr. Wiggins. The hearing judge's findings are not clearly erroneous and we overrule these exceptions. Respondent excepts to the hearing judge's finding that she purposefully omitted lines from the "Statement of Settlement," arguing that she omitted those lines to avoid misleading the Butlers. The hearing

judge's inferences drawn from the facts are not clearly erroneous, and we overrule the exception.

Finally, respondent excepts to the hearing judge's findings that Mrs. Butler testified that she believed that her case was still viable, that her case had settled with Amica, and that the check she originally received was from Amica. We accept respondent's correction and find that Mrs. Butler did not testify to these statements. We note, however, that the hearing judge did not rely upon Mrs. Butler's beliefs in any of its conclusions of law. Rather, the hearing judge relied upon the undisputed facts that respondent did not disclose the facts surrounding the dismissal of the case or the source of the funds. Additionally, the hearing judge relied upon respondent's testimony that she intended for the Butlers to be unaware of the source of the funds and the status of the case.

■ We grant respondent's exception as to Rule 1.1 Competence, and Rule 1.3 Diligence. The record indicates that the parties stipulated that the statute of limitations had run on the client's complaint before respondent discovered the filing error. Based upon this stipulation, the Circuit Court found that "if the Petitioner had maintained an appropriately efficient and reliable system to process her client's matter and manage her case files, the Clerks's Office error would have been discovered prior to the Statute of Limitations expiring," and thus, respondent exhibited incompetence in handling the Butlers' case. Respondent appears to have filed the complaint in the Butler case properly; it was the Clerk's Office error that resulted in the problem. Respondent's problem arose in her failure to detect that the check she gave to the Clerk's Office for the Butler complaint was not negotiated. While a better office system would have detected the problem, we do not think that such oversight or negligence constitutes sanctionable conduct under Rule 1.1. *See Attorney Grievance v. Thompson,* 376 Md. 500, 512, 830 A.2d 474, 481 (2003) (stating that "a single mistake does not necessarily result in a violation of Rule 1.1, and may constitute negligence but not misconduct under the rule").

Respondent clearly violated Rule 1.4 Communication, Rule 1.7(b) Conflict of Interest, Rule 1.16(a)(1) Withdrawal from Representation, and Rule 8.4 Misconduct.

### B. Petitioner's Exceptions

Bar Counsel excepts to the hearing judge's conclusion that respondent's good faith reliance on advice of counsel as a mitigating factor had been proven by a preponderance of the evidence. Bar Counsel maintains that this conclusion is inconsistent with the hearing judge's findings of fact and other conclusions of law. We disagree and overrule this exception. Judge Platt heard the witnesses testify and had the unique opportunity to assess their credibility. Although he rejected reliance on advice of counsel as an affirmative defense to whether the Rules of Professional Conduct had been violated, it is not necessarily inconsistent to find that respondent's contact with Mr. Wiggins was a mitigating factor.

█ Bar Counsel also excepts to Judge Platt's conclusion that respondent displayed a high degree of remorse for her actions. At the hearing before the Circuit Court, respondent did not express remorse for her misrepresentations and deceitful conduct. Respondent testified during cross-examination that "I am saying I did not want to mislead the clients in any way, shape, form or fashion." She also testified that "I don't believe, Ms. [Bar Counsel], that I have told any untruths to the clients. So that's it." Her testimony constituted a continued denial of responsibility. She repeatedly denied any dishonesty. We agree with Bar Counsel and grant the exception.

### III. Sanction

We turn now to the appropriate sanction. Bar Counsel maintains that respondent should be disbarred. We agree.

█ In fashioning the appropriate sanction to be imposed, we are guided by our interest in protecting the public and the public's confidence in the legal profession. *Attorney Grievance v. Powell*, 369 Md. 462, 474, 800 A.2d 782, 789

(2002). As we have often stated, the purpose of attorney disciplinary proceedings is not to punish the lawyer, but to protect the public as well as to deter other lawyers from engaging in similar misconduct. *Attorney Grievance v. Ellison*, 384 Md. 688, 714, 867 A.2d 259, 274 (2005). The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Id.*

 Although respondent violated Rules 1.2, 1.4(a) and (b), 1.7(b), and 1.16(a)(1), it is the violations of Rules 8.4(c) and (d), and the conduct underlying those violations, that lead the Court to conclude that disbarment is the appropriate sanction. To reiterate, Rule 8.4(c) and (d) provide as follows:

"It is professional misconduct for a lawyer to:

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]"

Respondent's "misrepresentation[s]" and "deceitful conduct" in concealing the true account of how she mishandled the Butlers' claims, falsifying a supposed settlement of those claims with the insurer, intentionally misrepresenting matters in negotiations with third-party health care providers to reduce their charges to the Butlers, and concealing from the Butlers the facts that might have supported lodging a professional negligence claim against respondent, implicate the core responsibilities of truth and honesty expected of attorneys.

 As Judge Battaglia wrote for the Court in *Attorney Grievance v. Angst*, 369 Md. 404, 420, 800 A.2d 747, 757 (2002):

"We recently iterated the unparalleled importance of honesty in the practice of law:

" 'Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to

such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.'

"*See Attorney Grievance Comm'n v. Lane,* 367 Md. 633, 646, 790 A.2d 621, 628 (2002) (quoting *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001))."

*Vanderlinde,* involving the intentional financial misappropriation genre of conduct violative of Rule 8.4(c), is a seminal case, in that it sought to return some measure of consistency to the analysis of sanctions in intentional dishonesty cases. After documenting the tortured and sometimes inexplicable "all-over-the-ballpark" array of sanctions in cases of attorney dishonesty that preceded it, 364 Md. at 389–413, 773 A.2d at 471–485, *Vanderlinde* endeavored to restore a principal, guiding star for the sanctions in such cases: "Disbarment ordinarily should be the sanction for intentional dishonest conduct." *Id.* at 418, 773 A.2d at 488.

Respondent was admitted to the Bar of this State in January, 1989. She has had one prior disciplinary action in which she received a reprimand for violation of Rule 1.8(e). *See Attorney Grievance v. Pennington,* 355 Md. 61, 78, 733 A.2d 1029, 1038 (1999). Respondent offers little in the way of mitigation. As we have discussed, *supra,* respondent did not express remorse for her deceitful actions. Respondent's protestations of remorse ring hollow when placed next to her testimony, during cross-examination by Bar Counsel at the evidentiary hearing, that, "I don't believe, Ms. [Bar Counsel], that I have told any untruths to the clients. So that's it." Likewise, regarding the obvious conflict of interest with her clients' interests, respondent testified at the evidentiary hearing: "Ms. [Bar Counsel], if you will help me to understand. I really don't understand your claim of conflict of interest." To the extent respondent expressed remorse, it is more in the nature of damage control than of sincere remorse.

Any other evidence of mitigation in this case is also insufficient to justify a sanction less than disbarment. Respondent's

attempt to purchase a plenary indulgence with her own money is more indicative of a selfish plan to conceal than of a praiseworthy desire to "make the client whole." Whether respondent acted to prevent her clients from knowing that they had a potential malpractice claim against her, or whether she acted out of a desire to spare her ill client further anguish, the profession is harmed when an attorney intentionally misrepresents matters to a client and behaves in the manner as did respondent. Although respondent did seek advice from Mr. Wiggins, who, unfortunately, gave her incorrect advice [10], her choice of Mr. Wiggins's counsel does little to mitigate the severity of her misdeeds. Her consultation with Mr. Wiggins, an attorney with offices in Washington, D.C., and who is not admitted in Maryland, smacks of a lack of good faith in seeking an objective and reliable ethics opinion, and seems rather to reflect a hope for ratification, from an uninformed, but friendly, source, of a course of conduct already selected.[11] Moreover, there is no evidence that she fully disclosed to him the proposed misrepresentations and deceit. Even had she done so, his "blessing" of the conduct could not be mitigating. As we have indicated, every lawyer is presumed to know and abide by the Rules of Professional Conduct. Disbarment of respondent is the appropriate sanction in order to protect the public and to inform other attorneys of the type of misconduct that will not be tolerated.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT,*

---

10. In addition to the poor advice Mr. Wiggins gave to respondent regarding her plan to pay the clients from her own funds without disclosing the source, it appears to us that the entire premise underlying respondent's actions, *i.e.*, that the statute of limitations had expired before respondent realized that the complaint had been misfiled, is erroneous. The complaint *had* been timely filed; it was erroneously docketed by the Clerk's Office and as such, the statute of limitations may well have been tolled by the proper filing of the complaint.

11. Mr. Wiggins also represented respondent in the earlier disciplinary matter for which she received a public reprimand. We also were advised at oral argument here that Mr. Wiggins is respondent's child's godfather and a close personal friend of respondent as well.

*INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JILL JOHNSON PENNINGTON.*

BELL, C.J., dissents.

Dissenting Opinion by BELL, C.J.

Misappropriation of entrusted funds, we have admonished, "is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991). *See Attorney Griev. Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *Attorney Griev. Comm'n v. Sullivan,* 369 Md. 650, 655–56, 801 A.2d 1077, 1080 (2002); *Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 410, 773 A.2d 463, 483 (2001). That same admonition has been given, and thus applies, in the case of conduct involving misrepresentation, *see Vanderlinde,* 364 Md. at 380, 773 A.2d at 465. *See* also *Attorney Griev. Comm'n v. Levitt,* 286 Md. 231, 238, 406 A.2d 1296, 1299 (1979); *Fellner v. Bar Ass'n of Balt. City,* 213 Md. 243, 247, 131 A.2d 729, 732 (1957), especially when the attorney has a history of such conduct. *Attorney Griev. Comm'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315–1319 (1994).

Whether the misconduct occurred is a question to be determined by the hearing court, whose findings in that regard are important and entitled to deference. *See Attorney Griev. Comm'n v. Parker,* 306 Md. 36, 46, 506 A.2d 1183, 1188 (1986). The intent with which the misconduct was committed also is entrusted to the determination of the hearing court. That determination is of further importance in that it speaks directly to the quality and degree of misconduct for sanction purposes. *Attorney Griev. Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661 (2001) (reasoning that "the state of mind of the attorney at the time of the violation [is] important

in the context of mitigation"); *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 29, 741 A.2d 1143, 1158 (1999) ("We agree with Respondent that his state of mind at the time he violated the ethical rules is important in the context of mitigation."); *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). ("Although ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction.").

The hearing court found that the respondent violated Rules 8.4(c) and (d), and thus engaged in conduct involving misrepresentation. It also concluded that she did so intentionally, that the intent with which she acted was not a defense:

"The Respondent contends that her actions were not intentional or willful and thus could not been viewed to violate Rule 8.4(c) and (d). This Court simply does not believe that Respondent did not intend the natural consequences of her action and nonaction, especially when the Respondent testified that she never wanted the Butlers to become aware of the source of the funds or the status of their claims. Intentional fraud can be sustained by means of concealment. *Attorney Grievance Commission v. Clements,* 319 Md. 289, 572 A.2d 174 (1990); See also *Attorney Grievance Commission v. Pinkney,* 311 Md. 137, 532 A.2d 1367 (1987) (Respondent prepared fictitious pleadings to give her client the impression that her case was filed in court, when in fact, she had failed to do so.) The act of concealment is exactly the conduct of the Respondent in this matter."

The court also rejected the "independent defense of reliance of counsel," which the respondent argued answered both the allegations with respect to Rule 8.4 and Rule 1.7. That defense was based on the respondent's having consulted with Mr. Wiggins concerning the appropriateness of proceeding to reimburse her client for a loss necessitated by her inaction, without fully disclosing to that client the circumstances and that it was her money, rather than that of an insurance company, that was being used to make the reimbursement. After conducting the analysis and reviewing the pertinent

cases, the hearing court concluded, "the Respondent . . . cannot rely on the good faith reliance on the defense of counsel as this is not the rule in Maryland." Nevertheless, it offered mitigating factors to be used when fashioning a sanction. Specifically, the hearing court made a "finding that the Respondent in good faith relied on the incorrect advice provided to her by Mr. Wiggins and, because of that reliance, did not impart to the Butlers information about the status of their claims or the source of the funds that they received." In addition, the hearing court noted that, "during the hearing, Respondent displayed a high degree of remorse for her actions. These actions should therefore be considered as mitigating factors when fashioning any sanction."

Despite the Hearing court's mitigation findings and, notwithstanding its recognition of the purpose of attorney discipline, the majority orders the respondent disbarred.

The goal of attorney discipline in this state is well settled and has been stated often: "The primary purpose in imposing discipline on an attorney for violation of the Rules of Professional Conduct is not to punish the lawyer but rather to protect the public and the public's confidence in the legal profession." *Attorney Griev. Comm'n v. Stein,* 373 Md. 531, 533, 819 A.2d 372, 375 (2003); *Attorney Griev. Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). When sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed are imposed, the public is protected. *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). *See Attorney Griev. Comm'n v. Sheinbein,* 372 Md. 224, 255, 812 A.2d 981, 999 (2002); *Attorney Griev. Comm'n v. Hess,* 352 Md. 438, 453, 722 A.2d 905, 913 (1999); *Attorney Griev. Comm'n v. Webster,* 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998). In determining the appropriate sanction, the Court is required to consider the facts and circumstances of each particular case, including consideration of any mitigating factors. *See Attorney Griev. Comm'n v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Griev. Comm'n v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998).

The absence of a dishonest or selfish motive is a factor that this Court has determined to be a mitigating factor, entitled to some weight. *Attorney Griev. Comm'n v. Thompson*, 367 Md. 315, 330, 786 A.2d 763, 772–73 (2001); *Attorney Griev. Comm'n v. Jaseb*, 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001); *Attorney Griev. Comm'n v. Glenn*, 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996). We have also recognized "remorse" as a mitigating factor. *Attorney Griev. Comm'n v. Post*, 379 Md. 60, 71, 839 A.2d 718, 725 (2003); *Attorney Griev. Comm'n v. Wyatt*, 323 Md. 36, 38, 591 A.2d 467, 468 (1991). Accordingly, I believe that an indefinite suspension, rather than disbarment, is the appropriate sanction.

That advice of counsel is not a defense or that the hearing court found that the respondent "intend[ed] the natural consequences of her action and nonaction," does not mean that, as a matter of law, the respondent acted with a dishonest or selfish motive. As we have seen, the hearing court concluded that the respondent had no intent to harm her client.

It necessarily follows, therefore, that she acted without a dishonest or selfish motive. That finding and conclusion is entitled to weight. That is true notwithstanding the facts that the hearing court could have reached the opposite conclusion and, more to the point, that that opposite conclusion is the one that this Court prefers and, as factfinder, would have reached. Nor can it be ignored that the hearing court concluded that the respondent expressed a high degree of remorse. Here again, that finding is entitled to weight. That the majority's review of the record leads it to the opposite finding does not undermine the finding and certainly is not a basis for its vitiation. When the hearing court's motive finding is considered with its finding of a high degree of remorse, disbarment simply is not warranted. There really is no good reason, and the public is not protected, when an attorney, acting, as found by the hearing court, without a selfish or dishonest motive is disbarred. Imposition of such a sanction under those circumstances, amounts to nothing more than punishment. Perhaps recognizing the logic of this position, the majority totally

disregards the hearing court's motive findings [1] and trivializes the remorse finding; in that way, the majority justifies its punishment—the exaction of the pound of flesh it believes required—of the respondent.

---

1. It is interesting to me, given the fact that the holding is that reliance on advice of counsel is not a defense, the emphasis that the majority places on where Mr. Wiggins is barred, going so far as to suggest that seeking advice from someone not barred in Maryland and, therefore, presumably, not familiar with Maryland procedure, somehow is more reprehensible, that her fault may have been less had she sought the advice of a Maryland attorney. Quaere: why do we refer frequently to commentators, experts, in many fields of endeavor, without regard to where they are barred? Curiously, sometimes, quite frequently, in fact, the opinion of the commentator finds its way into appellate opinions, even those of this Court. It is perhaps obvious, but I want to be clear, I do not share the majority's view.