*Attorney Grievance Commission of Maryland v. Shakaira Simone Mollock*, Misc. Docket AG No. 54, September Term, 2015. Opinion by Getty, J.

**ATTORNEY DISCIPLINE — SANCTIONS — DISBARMENT —** Respondent, Shakaira Simone Mollock, violated Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a), (c), and (e), 1.16(d), 8.1(a) and (b), and 8.4(a), (c), and (d) of the Maryland Lawyers' Rules of Professional Conduct. These violations stemmed from Respondent's failure to competently and diligently represent two clients, including misrepresentations to the clients regarding the status of their cases and failure to return their unearned fees. In addition, Respondent submitted falsified evidence to Bar Counsel, and failed to respond to numerous requests for information during Bar Counsel's investigation. Disbarment is the appropriate sanction when an attorney engages in such intentional dishonest conduct.

Circuit Court for Baltimore County
Case No. 03-C-15-013038
Argued: September 8, 2016

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 54

September Term, 2015

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SHAKAIRA SIMONE MOLLOCK

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Getty, J.

_____

Filed: September 30, 2016

Shakaira Simone Mollock ("Respondent") was admitted to the Bar of this Court on January 6, 2012. At all times relevant to this case, she maintained an office for the practice of law in Baltimore County, Maryland.

The Attorney Grievance Commission of Maryland ("Petitioner"), by Glenn M. Grossman, Bar Counsel, and Lydia E. Lawless, Assistant Bar Counsel, filed a Petition for Disciplinary or Remedial Action and after the disciplinary hearing recommended that we disbar Respondent for violating the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").[1] The Petition alleged that Respondent, based on her representation of Michael C. King and Marlow Bates, had violated several rules of the MLRPC: Rule 1.1 (Competence);[2] Rule 1.3 (Diligence);[3] Rule 1.4(a)

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and moved to Title 19, Chapter 300 of the Maryland Rules. This opinion refers to the MLRPC, not the MARPC, because all relevant conduct took place before July 1, 2016.

[2] MLPRC 1.1 provides:
> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[3] MLRPC 1.3 provides:
> A lawyer shall act with reasonable diligence and promptness in representing a client.

and (b) (Communication);[4] Rule 1.5(a) and (b) (Fees);[5] Rule 1.15(a), (c), and (e) (Safekeeping

Property);[6] Rule 1.16(d) (Declining or Terminating Representation);[7] Rule 8.1(a) and (b) (Bar

Admissions and Disciplinary Matters);[8] and Rule 8.4(a), (c), and (d) (Misconduct).[9]

---

[4] MLRPC 1.4 provides, in relevant part:
        (a) A lawyer shall:
        (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
        (2) keep the client reasonably informed about the status of matter;
        (3) promptly comply with reasonable requests for information; and
        (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
        (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] MLRPC 1.5 provides, in relevant part:
        (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The facts to be considered in determining the reasonableness of a fee include the following:
        (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
        (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
        (3) the fee customarily charged in the locality for similar legal services;
        (4) the amount involved and the results obtained;
        (5) the time limitations imposed by the client or by the circumstances;
        (6) the nature and length of the professional relationship with the client;
        (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
        (8) whether the fee is fixed or contingent.
        (b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

[6] MLRPC 1.15 provides, in relevant part:
        (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to

2

Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

\* \* \*

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claims interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

[7] MLRPC 1.16 provides, in relevant part:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[8] MLRPC 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[9] MLRPC 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

By Order dated November 23, 2015, we referred the Petition to the Honorable Robert E. Cahill of the Circuit Court for Baltimore County for an evidentiary hearing and to issue findings of fact and recommended conclusions of law. On January 27, 2016, Judge Cahill entered an Order of Default against Respondent for failure to respond to the Petition for Disciplinary or Remedial Action, and scheduled an evidentiary hearing for March 31, 2016. At the hearing, Judge Cahill admitted Petitioner's exhibits into evidence and scheduled a second hearing date for April 13, 2016, to allow Respondent to present any evidence of mitigation. Respondent failed to appear or submit any evidence at either hearing.

Respondent failed to take any action to vacate the Order of Default or to participate in the disciplinary proceedings in any way. On April 29, 2016, the hearing judge entered his Findings of Fact and Conclusions of Law. Neither party filed exceptions to these findings, and Respondent failed to offer any recommendation contrary to the Petitioner's recommendation for disbarment. We hold that Judge Cahill's findings were not clearly erroneous, and his conclusions of law were supported by clear and convincing evidence. We disbarred Respondent in a *per curiam* order issued September 9, 2016. *Attorney Grievance Comm'n v. Mollock*, --- Md. --- (2016). In this opinion, we explain that decision.

### I. Background

Judge Cahill entered the following findings of fact regarding Respondent's representation of Mr. King:

### Representation of Michael C. King

On July 24, 2013, Michael C. King retained the Respondent to represent him in defense of a pending foreclosure action styled *Kristine D. Brown, et al. v. Michael C. King*, Case No. 03-C-13-007057, in the Circuit Court for Baltimore County. Mr. King paid the Respondent $1,050.00 in advanced attorney's fees. The Respondent did not deposit or maintain Mr. King's funds in an attorney trust

---

(d) engage in conduct that is prejudicial to the administration of justice . . . .

4

account until earned. Mr. King did not provide the Respondent with informed consent confirmed in writing to permit her to deposit his funds in any account other than a trust account.

On July 25, 2013, the Respondent filed on behalf of Mr. King a Request for Foreclosure Mediation. The Respondent failed to send a copy of the Request for Foreclosure Mediation to either the secured party or the representative of the third party as required by the Maryland Rules. As of July 25, 2013, Mr. King was not eligible for foreclosure mediation. The Respondent failed to advise Mr. King that he was not eligible for mediation.

On October 3, 2013, the foreclosure sale of Mr. King's property was held. On March 26, 2014, the foreclosure sale was ratified. The Respondent failed to advise Mr. King that his property had been sold or that the sale had been ratified. In March 2014, Mr. King, on his own initiative, discovered that his house had been sold. He contacted the Respondent who assured him that she would take appropriate remedial action. The Respondent, despite her assurances, took no action to remediate the consequences of her negligence. The Respondent, despite doing minimal work on Mr. King's behalf, failed to refund any portion of the fee that he had prepaid.

On April 25, 2014, Mr. King, through successor counsel, Leo W. Ottey, Jr., Esquire, filed a Motion to Vacate Order Ratifying Foreclosure Sale. The Substitute Trustees filed an Opposition, and a hearing was held on August 27, 2014.

Judge Cahill further found that, on October 14, 2014, the Honorable Mickey J. Norman of the Circuit Court for Baltimore County filed a Memorandum Opinion denying Mr. King's Motion to Vacate. Judge Norman found that Respondent had not complied with Maryland Rule 14-209.1(c)(2)(A)(i), which requires a borrower filing a request for mediation to "serve a copy of the request on the other parties." The Rule also instructs that "[t]he clerk shall not accept for filing a request for postfile mediation that does not contain a certificate of service." Md. Rule 14-209.1(c)(2)(A)(i).

Judge Norman discussed Mr. King's Request for Foreclosure Mediation ("Request"), filed by Respondent, which consisted of three pages. The bottom of page two contained a certificate of service with the following language:

I certify that I have sent a copy of this Request for Foreclosure Mediation to the Clerk of the Circuit Court and to the secured party, or the representative of the

5

secured party, by regular U.S. mail, postage pre-paid, at the address listed at the top of this form. I have served the party that brought this foreclosure action by sending this Request for Foreclosure Mediation by regular U.S. mail, postage pre-paid, to its foreclosure attorney in (or at the address on) the addressed envelope provided with this form.

Below this language were lines labeled "Signature of Borrower," "Date," and "Print Name." Rather than including the appropriate information for each line, the "Print Name" line was left blank, and above the "Signature of Borrower" and "Date" lines, written in cursive, were the words, "See attached." This notation referred to page three of the Request, which contained another certificate of service with the following language:

> I hereby certify that on this 25th day of July 2013, I hand delivered a copy of the foregoing Request for Foreclosure Mediation to **Baltimore County Circuit Court, 401 Bosley Avenue, Towson, Maryland 21204**.

(Emphasis added.) Respondent signed the signature line following this language, accompanied by the printed text "S. Simone Mollock, Esquire / Attorney for Michael C. King."

Based on this document, Judge Norman found that neither Mr. King nor Respondent had sent a copy of the Request to the secured party or a representative of the secured party. Therefore, the Clerk of the Circuit Court for Baltimore County ("Clerk") should not have accepted it:

> It is abundantly clear, contrary to the Certificate of Service at the bottom of Page 2 of the Request, that neither the Defendant, nor his counsel, Mollock, sent a copy of the Request for Foreclosure Mediation to the secured party, or the representative of the secured party. Because it was clear that the Defendant did not properly serve the Plaintiff, the Clerk should not have accepted or docketed the Request. . . . Having failed to properly serve the Plaintiff, the Defendant was not entitled to Foreclosure Mediation.

Accordingly, Judge Norman denied Mr. King's Motion to Vacate.

The hearing judge continued with his findings of fact:

### Bar Counsel Investigation of Mr. King's Complaint

On September 2, 2014, Mr. King filed a complaint with the Attorney Grievance Commission. By letter dated September 16, 2014, Bar Counsel forwarded Mr. King's complaint to the Respondent at the address she maintained

6

with the Client Protection Fund and requested a written response within fifteen days. The Respondent received Bar Counsel's September 16, 2014 letter on or about September 17, 2014. As of October 8, 2014, having received no response, Bar Counsel wrote the Respondent again, at the address she maintained with the Client Protection Fund, provided her with a copy of the September 16, 2014 correspondence and requested a written response within ten days. The Respondent received Bar Counsel's October 8, 2014 letter on or about October 9, 2014.

On October 21, 2014, Mr. King's successor attorney, Leo W. Ottey, Jr., supplemented Mr. King's complaint. As of November 10, 2014, having received no response, Bar Counsel wrote to the Respondent again at the address she maintained with the Client Protection Fund. Bar Counsel provided the Respondent with copies of the previous correspondence as well as Mr. Ottey's October 21, 2014 letter. Bar Counsel informed the Respondent that Mr. King's complaint had been docketed for further investigation and requested that she provide a response to Mr. King's complaint, a complete explanation for her failure to respond to the previous correspondence, all addresses [where] she had lived or maintained an office for the previous two years and confirmation that the Client Protection Fund maintained her current contact information. The information was to be provided no later than December 1, 2014. The Respondent received Bar Counsel's November 10, 2014 letter on or about November 11, 2014.

On December 18, 2014, no response having been received, Edwin P. Karr, Investigator for the Attorney Grievance Commission, went to the Respondent's office to hand deliver copies of the previous correspondence. The Respondent was not present and Mr. Karr left his business card with the receptionist and asked that the Respondent contact him. On December 19, 2014 at 9:01 a.m., Mr. Karr received a text message from the Respondent. The Respondent stated: "Good morning Mr. Karr. This is Simone Mollock is it too early to call you?" At 9:02 a.m., Mr. Karr responded to the text message and stated that she could call. The Respondent did not call Mr. Karr.

On December 22, 2014, Mr. Karr called the Respondent on her cellular phone and left a voicemail message. The Respondent did not return his call. On December 23, 2014, Mr. Karr called the Respondent's office and left a message asking the Respondent to call him. The Respondent did not return his call.

On January 5, 2015, Mr. Karr travelled to the Respondent's office and spoke with the Respondent's receptionist. The receptionist advised Mr. Karr that Ms. Mollock was not in the office and assured him that she had delivered Mr. Karr's messages to Ms. Mollock. Later that day, Mr. Karr called the Respondent's cellular phone. The Respondent did not answer.

On January 6, 2015, Mr. Karr left a voicemail message on the Respondent's cellular phone. The Respondent did not return Mr. Karr's call.

On January 7, 2015, Mr. Karr obtained the Respondent's home address and telephone number. He called the Respondent's home phone number, the phone rang continuously and Mr. Karr was unable to leave a message. Later that day, Mr. Karr called the Respondent's cellular phone and received a message that the voice mailbox was full.

On January 9, 2015, Mr. Karr travelled to the Respondent's law office. The Respondent was not present but the receptionist advised Mr. Karr that she was expected to be in at 4:30 p.m. Mr. Karr then travelled to the Respondent's home. No one was home and Mr. Karr left a business card on the front door. Later that day, Mr. Karr received a phone call from the Respondent's sister who advised that the Respondent was having a difficult time personally and described the circumstances. The Respondent's sister called Mr. Karr a short while later and advised that the Respondent would meet him at her office that afternoon. At 4:00 p.m., Mr. Karr met with the Respondent at her office and provided her with copies of the previous correspondence. The Respondent stated that her written response would be provided by January 14, 2015.

On January 20, 2015, Bar Counsel received the Respondent's first response (dated January 13, 2014). The Respondent failed to provide any response to Mr. King's complaint but advised that she would provide same no later than January 16, 2015. As of January 26, 2015, the Respondent had not provided any additional information. On January 26, 2015, Bar Counsel wrote to the Respondent at her office and home addresses and advised her that no response had been received. The Respondent received Bar Counsel's January 26, 2015 letter on or about January 27, 2015.

On March 12, 2015, Bar Counsel received a letter from the Respondent (dated January 15, 2015). In this letter, the Respondent misrepresented to Bar Counsel that she had spent thirty seven hours on Mr. King's case; that she contacted Wells Fargo for information about Mr. King's mortgage; that she asked Mr. King to make a $2,000 lump sum payment toward his arrears; and that an attorney in her office agreed to file a bankruptcy petition on Mr. King's behalf pro bono. Moreover, she intentionally altered the copy of the Request for Foreclosure Mediation provided to Bar Counsel. Unlike the Request for Foreclosure Mediation filed with the Circuit Court and discussed by Judge Norman in his Memorandum Opinion, the Request for Foreclosure Mediation provided to Bar Counsel contained the following [certificate of service]:

> I hereby certify that on this 25th day of July, 2013, I hand delivered a copy of the foregoing Request for Foreclosure Mediation to **Kristine D. Brown, Esquire, 10021 Balls Ford Road, Suite 200, Manassas, VA 20109**.

[(Emphasis added.)]

On March 16, 2015, Bar Counsel wrote to the Respondent at the address maintained by the Client Protection Fund and requested copies of all documents created and maintained pursuant to Maryland Rule 16-606.1 for the receipt, maintenance and disbursement of Mr. King's funds including, but not limited to, client ledgers, escrow account statements and any cancelled checks. The requested information was to be provided no later than March 30, 2015. The Respondent received the March 16, 2015 letter on or about March 17, 2015. The Respondent failed to ever provide the requested information and documentation.

### Representation of Marlow Bates

In November 2013, Marlow Bates retained the Respondent to file a petition for writ of coram nobis. At the time, Mr. Bates was in federal custody. The Respondent charged Mr. Bates a flat fee [of] $1,400 for filing the Petition. Mr. Bates' sister, India Bates, paid the fee [in] full on his behalf. The Respondent did not deposit the funds for the benefit of Mr. Bates into an attorney trust account. Neither Mr. Bates nor his sister provided the Respondent with informed consent confirmed in writing to permit her to deposit the funds in any account other than a trust account.

During the pendency of the representation, the Respondent met with Mr. Bates approximately four times to discuss [his] request for coram nobis relief. The Respondent repeatedly misrepresented to Mr. Bates and members of his family that she was making progress on his case, and that she had filed a Petition for Writ of Coram Nobis on Mr. Bates' behalf. The Respondent failed to perform any work on behalf of Mr. Bates and failed to file a petition for writ of corum nobis.

The Respondent failed to communicate with Mr. Bates and his family members with whom the Respondent had been authorized to speak. Eventually, Mr. Bates terminated the representation and requested a refund. The Respondent refused to return the funds received for the benefit of Mr. Bates, claiming that the fees were earned. The Respondent failed to deposit and maintain the disputed funds into an attorney trust account until resolution of the dispute.

### Bar Counsel Investigation of Mr. Bates' Complaint

On November 3, 2014, Mr. Bates filed a complaint with the Attorney Grievance Commission. By letter dated November 6, 2014, Bar Counsel forwarded Mr. Bates' complaint to the Respondent at the address she maintained with the Client Protection Fund and requested a written response within fifteen days. The Respondent received Bar Counsel's November 6, 2014 letter on or about November 7, 2014. As of December 16, 2014, having received no response, Bar Counsel wrote the Respondent again at the address she maintained with the Client Protection Fund, provided her with a copy of the November 6, 2014 correspondence and requested a written response within ten days. The Respondent received Bar Counsel's December 16, 2014 letter on or about December 17, 2014.

As of January 26, 2015, having received no response, Bar Counsel wrote to the Respondent again at the address she maintained with the Client Protection Fund. Bar Counsel provided the Respondent with copies of the previous correspondence and informed the Respondent that Mr. Bates' complaint had been docketed for further investigation. Bar Counsel requested that the Respondent provide a response to Mr. Bates' complaint, a complete explanation for her failure to respond to the previous correspondence, a complete copy of Mr. Bates' client file and all documents created and maintained for the receipt, maintenance and disbursement of Mr. Bates' funds pursuant to Maryland Rule 16-606.1. The information and documentation was to be provided no later than February 16, 2015. The Respondent received Bar Counsel's January 26, 2015 letter on or about January 27, 2015.

On March 4, 2015, having not received any response, [Mr. Karr] left a voicemail message for the Respondent at her home asking that she contact him. Later that day at 11:07 a.m., the Respondent texted Mr. Karr and stated: "Good morning Mr. Karr, is everything okay? I'm wrapping up court. I'll call you as soon as I leave." Mr. Karr responded at 11:13 a.m. stating: "Pls call it is regarding a complaint." The Respondent did not call or contact Mr. Karr.

On March 9, 2015, Mr. Karr travelled to the Respondent's law office. The Respondent was not present but the receptionist advised that the Respondent still worked in the office. Mr. Karr left a business card with the receptionist along with instructions that the Respondent should contact him immediately. Also on March 9, 2015, Mr. Karr travelled to the Respondent's home. No one answered the door and Mr. Karr left a business card with [the] instruction that the Respondent contact him immediately.

On March 10, 2015 at 1:19 p.m., Mr. Karr texted the Respondent, "Ms. Mollock you need to contact me ASAP." The Respondent failed to respond. On March 11, 2015, Mr. Karr left a voicemail message for the Respondent on her cellular phone.

On March 12, 2015, Mr. Karr again travelled to the Respondent's home. The Respondent's daughter advised Mr. Karr that the Respondent was not home. Mr. Karr asked the Respondent's daughter to advise the Respondent to contact him immediately. The Respondent failed to communicate with Mr. Karr in any manner.

As of March 16, 2015, having received no response, Bar Counsel wrote to the Respondent again at the address she maintained with the Client Protection Fund. Bar Counsel provided the Respondent with copies of the previous correspondence and reminded her of her obligation to respond to Bar Counsel. The Respondent received Bar Counsel's March 16, 2015 letter on or about March 17, 2015. The Respondent never provided any response to Bar Counsel regarding Mr. Bates' complaint.

Judge Cahill then recommended the following conclusions of law:

**CONCLUSIONS OF LAW**

This [c]ourt finds, by clear and convincing evidence, that the Respondent violated the following Rules of the Maryland Lawyers' Rules of Professional Conduct:

**Rule 1.1. Competence.**

Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

The [c]ourt finds the Respondent violated Rule 1.1 in the King and Bates matters for the reasons stated in reference to violations of Rules 1.3, 1.4, 1.5 and 1.15 below.

**Rule 1.3. Diligence.**

Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

The [c]ourt finds the Respondent violated Rule 1.3 in the King matter. The Respondent filed a defective request for foreclosure mediation and failed to serve a copy of the Request on the secured party or a representative of the third party as required by the Maryland Rules. The Respondent failed to advise Mr. King that he was ineligible to participate in foreclosure mediation. The Respondent failed to advise Mr. King that his home was sold and that the sale was ratified. When Mr. King advised the Respondent of the sale, the Respondent failed to take any action on behalf of Mr. King.

The [c]ourt finds the Respondent violated Rule 1.3 in the Bates matter. The Respondent met with Mr. Bates on several occasions but failed to perform any legal services for him or communicate with him regarding the representation.

**Rule 1.4. Communication.**

Rule 1.4 provides, in part:

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects

11

assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The [c]ourt finds the Respondent violated Rule 1.4(a) and (b) in the King matter. The Respondent failed to advise Mr. King that he was ineligible to participate in foreclosure mediation thereby failing to explain the foreclosure process to the extent necessary to permit Mr. King to make informed decisions regarding the representation. The Respondent failed to keep Mr. King reasonably informed about the status of his case; she failed to advise him that his home was sold and that the sale was ratified and when Mr. King advised the Respondent of the sale, she failed to take any action on behalf of Mr. King.

The [c]ourt finds the Respondent violated Rule 1.4(a) in the Bates matter as the Respondent misrepresented to Mr. Bates and his family [members] that she was performing the services for which she was retained.

## Rule 1.5. Fees.

Rule 1.5 provides, in part:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The facts to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

The [c]ourt finds the Respondent violated Rule 1.5(a) in the King matter. Mr. King paid the Respondent $1,050.00 to represent him in defense of his pending foreclosure action. The Respondent provided no service for value to Mr. King. The

Respondent's only action pursuant to the representation was to file a defective Request for Foreclosure Mediation. Given the lack of services provided and the deficiencies in the representation, the fee collected and retained by the Respondent was unreasonable in violation of Rule 1.5(a).

The [c]ourt finds the Respondent violated Rule 1.5(a) in the Bates matter. Mr. Bates' family, on his behalf, paid the Respondent $1,400.00 representing the full fee charged for filing of a Petition for Writ of Coram Nobis. The Respondent failed to perform any work on behalf of Mr. Bates and the fee collected and retained by the Respondent was unreasonable in violation of Rule 1.5(a).

### Rule 1.15. Safekeeping Property.

Rule 1.15 provides, in part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
* * *
(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.
* * *
(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

The [c]ourt finds the Respondent violated Rule 1.15(a) and (c) in both the King and Bates matters. The Respondent did not have informed consent confirmed in writing to allow her to deposit the funds into any account other than her attorney trust account. The Respondent failed to deposit Mr. King's $1,050.00 into her trust account and failed to deposit $1,400.00 for the benefit of Mr. Bates into her attorney trust account in violation of the Rule.

13

The [c]ourt finds the Respondent violated Rule 1.15(e) as it relates to Mr. Bates. Mr. Bates articulated and clearly raised with the Respondent that he disputed that she had earned her fee. Despite the dispute, the Respondent failed and refused to segregate that fee and to deposit and maintain the funds in her attorney trust account until resolution of the dispute.

## Rule 1.16. Declining or Terminating Representation.

Rule 1.16 provides, in part:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

The [c]ourt finds the Respondent violated Rule 1.16(d) in both the King and Bates matters. The Respondent, upon termination, failed and refused to refund Mr. King's or Mr. Bates' unearned fees. As discussed above, the fees paid were not reasonable because the Respondent performed little to no services.

## Rule 8.1. Bar Admission and Disciplinary Matters.

Rule 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

The [c]ourt finds the Respondent violated Rule 8.1(a) in the King matter. The Respondent knowingly misrepresented to Bar Counsel that she had spent thirty seven hours on Mr. King's case; that she contacted Wells Fargo for information about Mr. King's mortgage; that she asked Mr. King to make a $2,000 lump sum payment toward his arrears; and that an attorney in her office agreed to file a bankruptcy petition pro bono. Additionally, and significantly, the Respondent violated Rule 8.1(a) when she knowingly and intentionally altered the Request for Foreclosure Mediation provided to Bar Counsel.

14

The [c]ourt finds the Respondent violated Rule 8.1(b) in both the King and the Bates matters. As discussed above, Bar Counsel made numerous attempt[s] to communicate with the Respondent; the Respondent failed and refused to respond to Bar Counsel's repeated requests for information.

## Rule 8.4. Misconduct.

Rule 8.4 provides, in part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
[* * *]
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

The [c]ourt, as discussed herein, having concluded that Respondent violated multiple Rules, concludes that Respondent has also committed misconduct in violation of Rule 8.4(a). *See* [*Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 411 (2009)].

The [c]ourt finds that each violation of Rule 8.1(a) constitutes a violation of Rule 8.4(c). The Respondent violated Rule 8.4(c) in the Bates matter when she misrepresented to Mr. Bates and members of his family that she was performing work and that the Petition for Writ of Error Coram Nobis had been filed. Additionally, this [c]ourt finds that the Respondent violated Rule 8.4(c) when she failed to refund Mr. King's and Mr. Bates' funds.

The Respondent's conduct, taken as a whole, brings the legal profession into disrepute in violation of Rule 8.4(d).

## AGGRAVATING FACTORS

In attorney discipline cases, the Court of Appeals has recognized the following aggravating factors:

(1) Prior disciplinary offenses;
(2) A dishonest or selfish motive;
(3) A pattern of misconduct;
(4) Multiple offenses;
(5) Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(6) Submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

15

(7) Refusal to acknowledge the wrongful nature of conduct;
(8) Vulnerability of victim;
(9) Substantial experience in the practice of law; and
(10) Whether he or she displayed indifference to making restitution.

*See* [*Attorney Grievance*] *Comm'n v. Sperling*, 434 Md. 658, 676–77 (2013) (citing Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions).

Petitioner argues that in this case, seven (7) factors are implicated. This [c]ourt agrees. The Respondent made misrepresentations to Bar Counsel and she fabricated a piece of evidence, the Certificate of Service on the Request for Foreclosure Medication. The [c]ourt must infer that this was motivated by a dishonest or selfish motive, namely to cover up her lack of competence in her representation of Mr. King. Her failure to refund the unearned fees to either Mr. King or Mr. Bates was by definition motivated by her selfish desire to keep the funds for herself. Factor (2). There is something of a pattern of misconduct and multiple offenses that has been established: the misconduct began in July 2013 with the King representation and continued through the end of Bar Counsel's investigation in March 2015, during which time she violated numerous Rules involving her obligations to her clients and Bar Counsel. Factors (3) and (4). The Respondent has engaged in bad faith obstruction of the disciplinary proceeding by failing to comply with Bar Counsel's repeated requests for information and by submitting an item of false evidence during the disciplinary process. Factors (5) and (6). The Respondent has not expressed remorse, nor has she acknowledged the wrongful nature of her conduct, or expressed a concern about making restitution. Factors (7) and (10).

## MITIGATION

The Court of Appeals recognizes the following as mitigating factors:

(1) Absence of a prior disciplinary record;
(2) Absence of a dishonest or selfish motive;
(3) Personal or emotional problems;
(4) Timely good faith efforts to make restitution or to rectify consequences of misconduct;
(5) Full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(6) Inexperience in the practice of law;
(7) Character or reputation;
(8) Physical or mental disability or impairment;
(9) Delay in disciplinary proceedings;
(10) Interim rehabilitation;
(11) Imposition of other penalties or sanctions;
(12) Remorse; and
(13) Remoteness of prior offenses.

16

[*Id.*] at 676.

Based upon the Petitioner's proffer, the undersigned finds that the Respondent has no prior discipline. While one might speculate that the Respondent's demonstrable professional shortcomings and her inability to acknowledge and address those shortcomings or to engage in these proceedings are collectively a consequence of inexperience in the private practice of law or of physical, emotional, or personal problems, it is an undeniable fact that the Respondent failed to prove any mitigation, or any extenuation or remedial action in these proceedings.

## II. Discussion

This Court conducts an independent review of the record to determine whether Bar Counsel satisfied its burden to prove its allegations by clear and convincing evidence. *Attorney Grievance Comm'n v. Edib*, 415 Md. 696, 706 (2010). "[W]e accept the hearing judge's findings of fact unless shown to be clearly erroneous." *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 168 (2014). Findings of fact to which neither party files an exception may be treated as conclusively established. *Edib*, 415 Md. at 707 (citing Md. Rule 16-759(b)(2)(A)). All proposed conclusions of law by the hearing judge are reviewed *de novo*. *Id.*

As neither party filed any exceptions to the hearing judge's findings of fact, we treat those findings as conclusively established.

We also hold that the hearing judge's proposed conclusions of law are supported by clear and convincing evidence. Judge Cahill found that Respondent violated MLRPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a), (c), and (e), 1.16(d), 8.1(a) and (b), and 8.4(a), (c), and (d). Respondent violated Rule 1.3 by filing a defective Request for Foreclosure Mediation in Mr. King's case, and failing to perform any legal services at all for Mr. Bates. Respondent violated Rule 1.4(a) and (b) by failing to keep Mr. King reasonably informed about the status of his case, and by misrepresenting to Mr. Bates and his family that she was making progress on his Petition for Writ of Error Coram Nobis. Respondent violated Rule 1.5(a) by collecting and retaining fees from both

17

Mr. King and Mr. Bates even though she had performed little to no work on both of their cases. Respondent violated 1.15(a) and (c) by failing to deposit the fees collected from Mr. King and Mr. Bates into her attorney trust account. These violations establish that Respondent failed to provide competent representation to both Mr. King and Mr. Bates, and thereby violated Rule 1.1.

Furthermore, Respondent violated Rule 1.16(d) by failing to refund Mr. King's and Mr. Bates's unearned fees. Respondent violated Rule 8.1(a) by knowingly and intentionally altering the certificate of service on the Request for Foreclosure Mediation provided to Bar Counsel. Respondent violated Rule 8.1(b) by failing to respond to Bar Counsel's repeated requests for information regarding both matters. Respondent violated Rule 8.4(c) by misrepresenting to Mr. Bates's family the work she was doing on his case, and by failing to refund both Mr. King's and Mr. Bates's fees.

Because Respondent committed multiple violations of the MLRPC, she also committed professional misconduct in violation of Rule 8.4(a). Finally, these numerous violations, and Respondent's conduct as a whole, bring the legal profession into disrepute in violation of Rule 8.4(d).

### III. Sanction

[T]he purpose of attorney disciplinary proceedings is not to punish the lawyer, but to protect the public as well as to deter other lawyers from engaging in similar misconduct. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.

*Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 596 (2005) (citation omitted) (citing *Attorney Grievance Comm'n v. Ellison*, 384 Md. 688, 714 (2005)). In light of Respondent's numerous violations, intentional dishonest conduct, failure to participate in the disciplinary proceedings, and the lack of any mitigating factors, we agreed with Bar Counsel's recommendation to disbar Respondent from the practice of law.

18

Respondent submitted a falsified document to Bar Counsel in an attempt to conceal her incompetence and lack of diligence in representing Mr. King. In addition, she made numerous misrepresentations to Mr. Bates and his family regarding her progress on his case. "[I]ntentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. . . . Disbarment ordinarily should be the sanction for intentional dishonest conduct." *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418 (2001). In this case, disbarment is warranted. *See Attorney Grievance Comm'n v. Williams*, 446 Md. 355, 376 (2016) (holding disbarment was an appropriate sanction where attorney made multiple misrepresentations to conceal his incompetence and lack of diligence from his client); *Attorney Grievance Comm'n v. London*, 427 Md. 328, 355 (2012) (holding disbarment was an appropriate sanction where attorney continually misrepresented to his client the status of his cases); *Attorney Grievance Comm'n v. Lane*, 367 Md. 633, 647 (2002) (holding disbarment was an appropriate sanction where attorney "failed to diligently act on his clients' behalf and he then compounded this failure by engaging in a pattern of deceitful and lying conduct designed to conceal his lack of diligence").

For these reasons, we entered the September 9, 2016 *per curiam* order disbarring Respondent and awarding costs against her.